## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-81487-BLOOM/VALLE

KERRI C. WOOD,
individually and on behalf of
others similarly situated,

      Plaintiff,

v.

J CHOO USA, INC.,
a Delaware corporation,

      Defendant.

_____/

## DEFENDANT J CHOO USA, INC.'S MOTION TO DISMISS
## AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendant J Choo USA, Inc. ("Jimmy Choo"),[1] moves for an order dismissing Plaintiff Kerri C. Wood's ("Wood") Complaint under the Fair and Accurate Credit Transactions Act ("FACTA") for lack of subject matter jurisdiction.  As set forth below, Wood lacks Article III standing to bring a claim under FACTA and her Complaint should be dismissed.

## SUMMARY OF THE ARGUMENT

Wood alleges that Jimmy Choo willfully violated FACTA by giving her a sales receipt that displayed her credit card's expiration date.  Wood further alleges that her "suit seeks only statutory damages . . . and it expressly is not intended to request any recovery for personal injury

---

[1] For purposes of this Motion, Jimmy Choo will treat J Choo Florida, Inc., as if it were the same entity as Jimmy Choo.

and claims related thereto." Compl. at ¶ 48.  Given her allegations, Wood has no standing under Article III to bring her action.

Wood has not alleged that she suffered any injury-in-fact under Article III that is concrete and particularized; that any alleged injury is fairly traceable to Jimmy Choo; or that a favorable decision in this dispute would redress any alleged injury.  Wood's Complaint should be dismissed for failing to meet any or all of these standing requirements.

Under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), Wood cannot allege a mere statutory violation in order to obtain Article III standing, but must allege that she suffered a concrete and particularized harm.  Wood's only alleged harm—"being exposed to an elevated risk of identity theft" and having "to review her credit card statements to guard against identity theft"—is not an injury-in-fact that can give rise to Article III standing.

Wood does not allege that any third party accessed her credit card information or even has attempted to misuse the information to commit identity theft.  In fact, Wood admits that she is "not aware of any specific instance of identity theft."  *See* Ex. 1 (Plaintiff's Responses to Defendant's First Set of Interrogatories, Request No. 15).  Additionally, Wood still is in possession of the receipt that contains her credit card's expiration date, which eliminates any risk that a potential fraudster could even obtain the protected information and commit identity or credit card theft.  *See* Ex. 2 (Plaintiff's Responses to Defendant's First Request for Production, Request No. 1).  There also is no allegation that any other Jimmy Choo customer has suffered identity theft as a result of expiration dates printed on credit card receipts.  As such, Wood's Complaint should be dismissed for lack of standing.[2]

---

[2] Following *Spokeo*, motions to dismiss for lack of standing have been filed in other pending FACTA cases in Florida.  *See, e.g.*, *Guarisma v. Microsoft Corp.*, No. 1:15-cv-24326-CMA, ECF No. 29

## BACKGROUND

FACTA was enacted in 2003 as an amendment to the Fair Credit Reporting Act ("FCRA") with the intended purpose of helping combat identity theft. *See* Pub. L. No. 108-159, 117 Stat. 1952 (2003). FACTA prohibits retail stores that accept credit or debit cards from "print[ing] more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g). FACTA distinguishes between "negligent" non-compliance and "willful" violations. A violation of FACTA's receipt truncation requirement that is "negligent," or non-willful, limits damages to the reimbursement for actual injuries suffered by the consumer. *See* 15 U.S.C. § 1681o(a). In contrast, a willful violation of FACTA can lead to statutory and punitive damages. *See* 15 U.S.C. § 1681n(a).

On October 17, 2015, Wood purchased a pair of sunglasses at the Jimmy Choo Palm Beach Gardens store and received a receipt that contained her credit card's expiration date. Compl. at ¶¶ 25-27; Ex. 3 (Wood's redacted receipt). Wood's receipt properly truncated her credit card number as required by FACTA. Compl. at ¶ 27; Ex. 3 (Wood's redacted receipt). The very same day that Wood purchased the pair of sunglasses, she contacted her attorney, Steven Jaffe, by telephone and email, about being represented in this lawsuit against Jimmy Choo. *See* Ex. 1 (Plaintiff's Responses to Defendant's First Set of Interrogatories, Request No. 14). Wood filed the present action ten days later on October 27, 2015 alleging a FACTA violation. Compl. at ¶¶ 56-62.

---

(S.D. Fla. June 15, 2016); *Tel. Sci. Corp. v. Hilton Grand Vacations Co.*, No. 15-cv-00969-CEM, ECF No. 42 (M.D. Fla. 2015); *Lopez v. Miami Dade Cty.*, No. 1:15-cv-22943-MGC, ECF No. 94 (S.D. Fla. 2015) (defendant filed motion for leave to file amended motion to dismiss complaint).

In this action, Wood alleges that as a result of Jimmy Choo's alleged FACTA violation, she and members of the alleged class "continue to be exposed to an elevated risk of identity theft." *Id.* at ¶ 62. Wood also alleges that she "has had to review her credit card statements and bank statements to guard against identi[ty] theft." *See* Ex. 1 (Plaintiff's Responses to Defendant's First Set of Interrogatories, Request No. 9). Wood, however, admitted that she is "not aware of any specific instance of identity theft." *Id.* at Request No. 15.

## STANDARD OF REVIEW

Given that "standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction" under Rule 12(b)(1). *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citation omitted). Attacks on jurisdiction may be facial attacks or factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial attacks "require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1529 (alterations in original; citation omitted). In contrast, factual attacks "challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *Id.*

A challenge to a party's standing is a "factual attack on the district court's subject matter jurisdiction that requires the court to look beyond the four corners of the complaint." *Sierra Club, Inc. v. St. John's River Water Mgmt. Dist.*, No. 6:14-cv-1877-Orl-40DAB, 2015 WL 6814566, at *3 (M.D. Fla. Nov. 6, 2015). Where, as here, a factual attack on jurisdiction does not implicate the merits, "no presumptive truthfulness attaches to the allegations of the plaintiff's

case, and the existence of disputed facts material to subject matter jurisdiction does not preclude the Court from evaluating the merits of the jurisdictional claim for itself." *Jones v. Waffle House, Inc.*, No. 6:15-cv-1637-Orl037DAB, 2016 WL 3231298, at *4 (M.D. Fla. June 13, 2016) (quotation marks and citation omitted).

## ARGUMENT

Under Article III, Section 2, of the U.S. Constitution, the person "seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (stating that the plaintiff bears the burden of proving standing). To establish Article III standing, a plaintiff must show that: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000); *see also Lujan*, 504 U.S. at 560-61. Wood has not met, and cannot meet, these three requirements for Article III standing.

**A.** **Wood Does Not and Cannot Show that She Suffered an Injury-In-Fact**

**1.** **Wood Must Allege That She Has Suffered a Concrete Actual Injury or Is at Substantial Risk of Suffering Imminent Harm**

In order to establish an injury-in-fact, a "plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). As discussed in detail below, Wood cannot meet this standard.

In *Spokeo,* the U.S. Supreme Court made clear that a plaintiff cannot satisfy the injury-in-fact requirement of Article III by alleging a bare violation of a federal statute without showing a "concrete injury."  *Id.* at 1549.  The Court analyzed the Article III standing requirement in the context of another provision of the FCRA, which requires consumer reporting agencies to follow procedures to assure the accuracy of consumer reports.  *Id.* at 1544.  The Court held that injury-in-fact "is a constitutional requirement" and Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  *Id.* at 1547-48 (citation omitted).

In order for any injury to be particularized, it "must affect the plaintiff in a personal and individual way."  *Id.* at 1548.  A concrete injury must be "de facto" and "must actually exist." *Id.* (stating that "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'").

*Spokeo* recognized that concrete injuries can be both tangible and intangible.  The Court stated that in "determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."  *Id.* at 1549 (stating that "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important.").  The Court emphasized, however, that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.*

Article III standing "requires a concrete injury even in the context of a statutory violation."  *Id.*  A plaintiff cannot merely "allege a bare procedural violation, divorced from any

concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* This, however, "does not mean . . . that the risk of real harm cannot satisfy the requirement of concreteness." *Id.*

Notably, the Court recognized that a "violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550. For example, "even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate." *Id.* In addition, "not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.*

As *Spokeo* recognized, a plaintiff may satisfy Article III's concreteness requirement by alleging not only an actual injury, but also the substantial risk of suffering an imminent injury. *Id.* at 1549. In *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013), cited with approval in *Spokeo*, the U.S. Supreme Court articulated the standard for when an alleged future injury may qualify as an injury-in-fact under Article III. The Court in *Clapper* held that attorneys and human rights, labor, legal, and media organizations lacked standing to challenge a foreign intelligence surveillance program based on possible future interception of their phone calls, because the plaintiffs' alleged injury depended upon an "attenuated chain of possibilities" and it was speculative whether their communications would be "imminently target[ed]." *Id.* at 1148.

The Court held that a threatened future injury "must be certainly impending to constitute an injury in fact" and that allegations of "possible future injury are not sufficient." *Id.* at 1147. The Court noted that plaintiffs need not demonstrate that it is "literal certainty" that they will suffer harm, and acknowledged that it has "found standing based on a 'substantial risk' that the

harm will occur." *Id.* at 1150 n.5. Thus, an allegation of future injury may suffice if the threatened injury is certainly impending, in the sense that there is a substantial risk that the harm will occur imminently. *Id.* at 1147.

Under Supreme Court precedent, in order to meet the injury-in-fact requirement for Article III standing, Wood must allege a concrete injury that is either actual or "certainly impending". *Id.* Merely alleging a violation of a federal statute or allegations of possible future injury are not sufficient. *Id.*

### 2.    Wood  Cannot Show that She Has Suffered a Concrete Injury that Is Actual or Certainly Impending

Here, the record evidence shows that Wood has not suffered any injury that is concrete and particularized, and further that she has no potential injury that is "certainly impending." *See* Compl. at ¶ 62; Ex. 1 (Plaintiff's Responses to Defendant's First Set of Interrogatories, Request Nos. 9, 15). Wood claims that, as a result of Jimmy Choo's alleged FACTA violation, she "has had to review her credit card statements and bank statements to guard against identi[ty] theft." *See* Ex. 1 (Plaintiff's Responses to Defendant's First Set of Interrogatories, Request No. 9). In response to an interrogatory asking her to describe her injuries, Wood responded as follows:

> 9.  Please identify all damages of any kind that you contend you have suffered as a result of the conduct alleged in the Complaint.
>
> **<u>ANSWER:</u> Plaintiff has had to review her credit card statements and bank statements to guard against identify [sic] theft. Plaintiff may recover statutory damages available under FACTA.**

*Id.* The only other harm that Wood identifies is a potential future injury, which she identifies as an "elevated risk of identity theft." Compl. at ¶ 62. Wood, however, admits that she is "not aware of any specific instance of identity theft." *See* Ex. 1 (Plaintiff's Responses to Defendant's

First Set of Interrogatories, Request No. 15).  None of the injuries alleged by Wood are sufficient for Article III standing.

The only claimed injury suffered by Wood is her allegation that she has had to review her credit card statements in order to guard against identity theft.  *See* Ex. 1 (Plaintiff's Responses to Defendant's First Set of Interrogatories, Request No. 9).  This alleged injury is not a concrete, actual injury sufficient to confer standing.  Indeed, courts have held that even when a plaintiff has incurred expenses to protect against an alleged risk of identity theft, standing still is not established.  *See Khan v. Children's Nat'l Health Sys.*, No. TDC-15-2125, 2016 WL 2946165, at *3, *5 (D. Md. May 18, 2016) (holding that incurring out-of-pocket expenses to protect against identity theft is not an injury-in-fact under Article III); *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 875-77 (N.D. Ill. 2014) (same); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) (same); *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 8 (D.D.C. 2007) (same); *see also Clapper*, 133 S. Ct. at 1155 (holding that plaintiffs "cannot manufacture standing by incurring costs in anticipation of non-imminent harm").  Wood's only other alleged injury is her unsupported and conclusory statement that she believes she has an "elevated risk of identity theft."  But any such alleged risk is merely a possible future injury that is not imminent and therefore does not constitute an injury-in-fact under Article III.  In amending FACTA, Congress itself explicitly recognized that "[e]xperts in the field agree that proper truncation of the card number, *by itself* as required by [FACTA], *regardless of the inclusion of the expiration date*, prevents a potential fraudster from perpetrating identity theft or credit card fraud."  The Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, 122 Stat. 1565

(2008), § 2(a)(6) (emphasis added).[3]   As described above, Jimmy Choo's receipt properly truncated Wood's credit card number in compliance with FACTA.

Relying on the Clarification Act, courts have held that failing to remove the credit card expiration date does not pose an increased risk of harm to the customer.  *See Vidoni v. Acadia Corp.*, No. 11-cv-00448-NT, 2012 WL 1565128, *5 (D. Me. Apr. 27, 2012) (finding that the inclusion of the expiration date does not create an "unjustifiably high risk of harm"); *see also Gardner v. Appleton Baseball Club, Inc.*, No. 09-C-705, 2010 WL 1368663, at *6 (E.D. Wis. Mar. 31, 2010) (stating that the "fact that the account number was properly truncated shows that the Defendant attempted to comply with FACTA, and given the fact that no additional protection of the consumer is achieved by deleting the expiration date, it can hardly be said that its action 'entail[ed] an unjustifiably high risk of harm that is either known or so obvious that it should be known'") (citation omitted).

Courts have made clear that a mere "elevated risk of identity theft" is not a concrete injury that is "certainly impending" and therefore is not sufficient to confer Article III standing. In *Khan*, 2016 WL 2946165, decided after *Spokeo*, the plaintiff filed a putative class action asserting statutory and common law causes of actions relating to a data breach that potentially exposed the names, addresses, dates of birth, Social Security and telephone numbers, and the private health care information of approximately 18,000 patients.  The plaintiff alleged that, as a result of the breach, she:  (i) faced an "imminent threat of identity theft;" (ii) "expended time and

---

[3]  The Clarification Act created a grace period between December 4, 2004 and June 3, 2008 (the date of enactment) that retroactively provided that "any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction . . . but otherwise complied with the requirements of section 605(g) [of the Fair Credit Reporting Act] for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt." Pub. L. No. 110-241, 122 Stat. 1565 (2008), § 3(a), (b).

incurred out-of-pocket expenses to monitor her credit and otherwise protect against identity theft;" and (iii) suffered a "loss of privacy" and has been "deprived of the value of personally identifiable information."  *Id.* at *3.

The court held that the plaintiff's alleged damages did not constitute an injury-in-fact under Article III.  The court concluded:

> [I]n the data breach context, plaintiffs have properly alleged an injury in fact arising from increased risk of identity theft if they put forth facts that provide either (1) actual examples of the use of the fruits of the data breach for identity theft, even if involving other victims; or (2) a clear indication that the data breach was for the purpose of using the plaintiffs' personal data to engage in identity fraud.

*Id.* at *5.  The *Khan* court also held that "incurring costs as a reaction to a risk of harm does not establish standing if the harm sought to be avoided is not itself 'certainly impending.'"  *Id.* at *6 (quoting *Clapper*, 133 S. Ct. at 1151).  Here, Wood does not even allege that she has suffered any costs as a result of the alleged risk of harm.

In another post-*Spokeo* case, *Gubala v. Time Warner Cable, Inc.*, No. 15-cv-1078, 2016 WL 3390415, at *1 (E.D. Wis. June 17, 2016) the plaintiff alleged that a cable services provider improperly retained customers' personal information, including names, addresses, Social Security numbers, and phone numbers, after the customer terminated cable services, in violation of the Cable Communications Policy Act.  The plaintiff alleged that the defendant's failure to destroy customers' personal information posed a risk to the customers' privacy.  *Id.* at *4.

Relying on *Spokeo*, the *Gubala* court found that there were no allegations "showing that the plaintiff has suffered a *concrete* injury as a result of the defendant's retaining his personally identifiable information."  *Id.* (emphasis in original).  The court stated that the plaintiff "does not

allege that the defendant has disclosed his information to a third party" or that such disclosure caused the plaintiff any harm. *Id.* The plaintiff also did not allege that "he has been contacted by marketers who obtained his information from the defendant, or that he has been the victim of fraud or identity theft." *Id.* As such, the court held that the plaintiff did not show that he suffered an injury-in-fact and dismissed the case for lack of standing. *Id.* at *7.

Other courts also have held that a mere elevated risk of identity theft, without proof that any personal information was actually stolen and disseminated, does not qualify as an injury-in-fact under Article III. In *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d at 872, the plaintiff alleged that a hacker gained access to the South Carolina Department of Revenue, possibly exposing approximately 3.6 million Social Security numbers, 387,000 credit and debit card numbers, and tax records for 657,000 businesses. Media reports called it potentially the "largest cyber-attack ever on a state government." *Id.* The plaintiff alleged that the data breach "placed the other class members and her at an 'imminent, immediate and continuing increased risk of identity theft and identity fraud,' and that they 'will now be required to take the time and effort to mitigate the actual and potential impact of the Data Breach on their lives.'" *Id.* at 874. Specifically, the plaintiff claimed that she and other class members received "untimely and/or inadequate notification" of the breach, suffered a "loss of privacy," incurred "out-of-pocket expenses . . . to mitigate the increased risk of identity theft and/or identity fraud," and suffered "violations of rights under the Fair Credit Reporting Act." *Id.* at 875.

The *Strautins* court held that the plaintiff's injuries were "too speculative" to confer Article III standing. *Id.* The court reasoned that whether the plaintiff or class members "actually become victims of identity theft as a result of the data breach depends on a number of variables,

such as whether their data was actually taken during the breach, whether it was subsequently sold or otherwise transferred, whether anyone who obtained the data attempted to use it, and whether or not they succeeded." *Id.* at 876. Plaintiff's complaint "provide[d] no basis to believe that any of these events have come to pass or are imminent." *Id.* Therefore, the court concluded that plaintiff's complaint failed to "establish standing to pursue any of her claims." *Id.* at 881.

In *Reilly v. Ceridian Corp.*, 664 F.3d 3 at 40, the plaintiffs argued that, as a result of a data breach, they suffered "an increased risk of identity theft," incurred "costs to monitor their credit activity," and suffered "from emotional distress." The court held that allegations of an "increased risk of identity theft" and having incurred costs to monitor one's credit resulting from a data breach are "insufficient to secure standing." *Id.* at 43. The court reasoned that the plaintiffs' alleged harm consisted of a "hypothetical, future injury" that was "insufficient to establish standing" and stated that until plaintiffs' allegations "come true, [plaintiffs] have not suffered any injury; there has been no misuse of the information, and thus, no harm." *Id.* at 42.

Similarly, in *Randolph v. ING Life Ins. and Annuity Co.*, 486 F. Supp. 2d at 4, the plaintiffs argued that the theft of their personal information, including their names, addresses, dates of birth, and Social Security numbers created a "substantial risk of identity theft" and they therefore were entitled to damages. While "none of the Plaintiffs assert that they have actually been the victim of identity theft," the plaintiffs alleged that as a "direct and proximate result" of the information theft, they "have been exposed to a risk of substantial harm and inconvenience, and have incurred or will incur actual damages in purchasing comprehensive credit reports and/or monitoring of their identity and credit for the indefinite future." *Id.* The court held that plaintiffs failed to "allege any injury that is actual or imminent, not conjectural or hypothetical"

and therefore lacked standing under Article III.  *Id.* at 7.  Although plaintiffs alleged that "their Information was stolen by a burglar . . . they do not allege that the burglar who stole the laptop did so in order to access their Information, or that their Information has actually been accessed since the laptop was stolen."  *Id.* at 7-8.  Plaintiffs' allegations "amount to mere speculation that at some unspecified point in the indefinite future they will be the victims of identity theft" and therefore "fail to allege an injury in fact."[4]  *Id.* at 8.

Here, Wood's assertion of injury is even weaker than that held insufficient in *Kahn*, *Reilly*, and the other cases cited above.  Indeed, Wood received her Jimmy Choo receipt last October – over nine months ago now – and yet admits that she is still "not aware of any specific instance of identity theft."  *See* Ex. 1 (Plaintiff's Responses to Defendant's First Set of Interrogatories, Request No. 15).  Wood's receipt has not been stolen; nor is it alleged to be in the hands of any third party.  In fact, Wood concedes she still has possession of her receipt, which significantly reduces, if not eliminates, any real or purported risk that a potential fraudster could even obtain the allegedly protected information and commit identity or credit card theft.

---

[4] Other courts have similarly concluded that a mere elevated risk of identity theft is not an injury-in-fact under Article III.  *See In re Zappos.com Inc.*, 108 F. Supp. 3d 949, 958-59 (D. Nev. 2015) (finding no standing where the last four digits of credit card numbers of twenty-four million customers were stolen, but there were no allegations of unauthorized purchases or other signs of misuse); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1049 (E.D. Mo. 2009) (holding that "an increased risk of becoming victims of identity theft crimes, fraud, abuse, and extortion" did not qualify as an injury-in-fact under Article III); *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 363, 366 (M.D. Pa. 2015) (finding no standing even though there was confirmation that hackers breached a payroll company's computer system and that confidential, personal information was "accessed," where there was "no allegation that the hacker caused a new bank account or credit card to be opened in any of Plaintiffs' names, or any other form of identity theft."); *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 656 (S.D. Ohio 2014) (finding no standing even though personal information was stolen from an insurance company's computer network and was actually disseminated); *Green v. eBay Inc.*, No. 14-1688, 2015 WL 2066531, at *4-6 (E.D. La. May 4, 2015) (finding no standing where hackers accessed eBay's files containing users' personal information); *see also In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig. (SAIC)*, 45 F. Supp. 3d 14, 19 (D.D.C. 2014) (finding standing only as to individual plaintiffs who had alleged actual misuse of their personal data).

*See* Ex. 2 (Plaintiff's Responses to Defendant's First Request for Production, Request No. 1).  In short, Wood's conclusory and wholly speculative allegations of an "elevated risk" fail to establish an imminent threatened injury that is "certainly impending," as is required to constitute an injury-in-fact.  *See Clapper*, 133 S. Ct. at 1147.  Accordingly, Wood's Complaint should be dismissed for lack of standing.

### 3.   Wood's Allegation of a Bare Procedural Violation Is Not a Substantive Harm Congress Intended to Prevent through FACTA

In *Spokeo*, the Supreme Court held that while a plaintiff cannot "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue,"  "both history and the judgment of Congress play important roles" when determining whether an intangible harm constitutes injury in fact.  136 S. Ct. at 1549. Several recent cases are instructive as to how a substantive concrete injury is distinguished from an alleged bare procedural violation.

In *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1248 (11th Cir. 2015), a plaintiff brought an action under the Telephone Consumer Protection Act of 1991 ("TCPA") alleging that it received an unsolicited one-page fax advertisement.  The Eleventh Circuit reviewed the legislative history of the TCPA, which showed that the "TCPA's prohibition against sending unsolicited fax advertisements was intended to protect citizens from the loss of the use of their fax machines during the transmission of fax data."  *Id.* at 1252. Because the plaintiff showed that its fax machine had been occupied and rendered unavailable for the period of time required for the junk fax to be transmitted—which was precisely the injury that Congress intended to prevent—the Eleventh Circuit found that the plaintiff had suffered a

"concrete and personalized injury in the form of the occupation of its fax machine" sufficient to satisfy Article III standing.  *Id.* at 1251.

Likewise, in *Church v. Accretive Health, Inc.*, No.  15-15708, 2016 WL 3611543, at *1 (11th Cir. July 6, 2016) (unpublished), a debtor sued under the Fair Debt Collection Practices Act ("FDCPA") after receiving debt-collection letters that failed to disclose information that the FDCPA mandates that debt collectors must provide.  Congress enacted FDCPA for the broad purpose of "eliminate[ing] abusive debt collection practices by debt collectors" where Congress found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a), (e).  Congress thus created, through the FDCPA, a substantive right to information that must be disclosed when a debt collector seeks to collect a debt.  *Church*, 2016 WL 3611543, at *3.  Because the debtor alleged that the defendant breached her substantive right to this information, which Congress legislated for the purpose of eliminating abusive debt collection practices, the Court had jurisdiction to hear her claim.  *Id.*

In contrast, here, Wood has not shown that she has suffered any actual injury that Congress sought to prevent when it enacted FACTA.  As discussed above, FACTA was enacted in 2003 with the intended purpose of helping combat identity theft.  *See* Pub. L. No. 108-159, 117 Stat. 1952 (2003).  Wood has not presented any evidence showing that she has been the victim of identity theft or credit card fraud; to the contrary, she admits she has no such evidence. Further, in amending FACTA through the Clarification Act, Congress explicitly recognized that "proper truncation of the card number, *by itself* as required by [FACTA], *regardless of the*

16

*inclusion of the expiration date*, prevents a potential fraudster from perpetrating identity theft or credit card fraud." Pub. L. No. 110-241, 122 Stat. 1565 (2008), § 2(a)(6) (emphasis added).[5]

Congress further found that almost immediately after FACTA had gone into effect:

> (4) . . . [H]undreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act even where the account number was properly truncated.
> (5) *None of these lawsuits contained an allegation of harm to any consumer's identity.*
> …
> (7) Despite repeatedly being denied class certification, the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without a corresponding consumer protection benefit.

Pub. L. No. 110-241, 122 Stat. 1565 (2008), § 2(a)(4), (5), (7) (emphasis added).

Accordingly, Congress passed the Clarification Act for the following purpose:

> [T]o ensure that consumers suffering from any *actual harm* to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers.

*Id.* at § 2(b) (emphasis added).

Under FACTA, therefore, Congress has expressed a clear intent to limit recovery to those "consumers suffering from *actual harm*" to their credit or identity, which Wood admits she has not suffered. Congress further determined that printing a credit or debit card expiration date on a receipt—the only violation Wood alleges—does not even create an elevated risk of identity theft or fraud. For these reasons, the printing of an expiration date is among those bare procedural violations of the FCRA that the Supreme Court has already held do not "cause harm or present

---

[5] Here, Jimmy Choo's receipt properly truncated Wood's credit card number, thus preventing a potential fraudster from perpetrating identity theft.

any material risk of harm." *Spokeo*, 136 S. Ct. at 1550. Because Wood has alleged only a "bare procedural violation, divorced from any concrete harm," she cannot satisfy the injury-in-fact requirement of Article III. *Id.* at 1549.

**B.      Wood Does Not Allege Any Injury that Is Fairly Traceable to Jimmy Choo**

In order to establish standing under Article III, a plaintiff also must show that the "injury is fairly traceable to the challenged action of the defendant." *Friends of the Earth, Inc.*, 528 U.S. at 180; *see also Lujan*, 504 U.S. at 561. There "must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560.

Here, even if Wood suffers identity theft or credit card fraud in the future, it could not be attributable to an allegedly non-compliant receipt from Jimmy Choo. Wood still is in possession of the receipt containing her credit card's expiration date, thus precluding any opportunity for a fraudster to obtain it.

**C.      Wood Has Not Shown How Any Alleged Injury Likely Will Be Redressed by a Favorable Decision**

Finally, even if Wood were able to show an injury-in-fact that is fairly traceable to Jimmy Choo, Wood has not and cannot show how a favorable decision in this action will redress any such injury. In order to establish Article III standing, Wood must show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 180; *see also Lujan*, 504 U.S. at 561. The plaintiff must show a "substantial likelihood" that the relief requested will redress the injury. *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 74-75, and n. 20 (1978).

Here, Wood seeks statutory damages under the FCRA (which are limited to between $100 and $1,000 dollars), punitive damages, and injunctive relief.  *See* Compl. at ¶ 48 and "WHEREFORE" clause; 15 U.S.C. § 1681n(a).  None of these remedies would redress any of Wood's alleged injuries.  First, Wood has not alleged that obtaining statutory or punitive damages can redress her alleged exposure to an elevated risk of identity theft.  Second, any injunctive relief granted by this Court could necessarily only prevent any potential future harm, and not redress Wood's alleged injury.

Additionally, Wood's requested injunctive relief is moot.  As soon as Jimmy Choo learned, through Wood's lawsuit, that it had printed receipts in error containing customers' credit card expiration dates, it took immediate action to correct the software error and ensure that its stores no longer printed expiration dates.  *See* Ex. 4 (Defendant's Responses and Specific Objections to Plaintiff's Requests for Admission, Response to Request No. 31) (the "software used to generate transaction receipts for individuals who made a purchase at Jimmy Choo retail stores located in the U.S. was reset to prevent the printing of the expiration date of a credit card on those receipts.").

## CONCLUSION

For all of these reasons, Jimmy Choo's motion to dismiss for lack of subject matter jurisdiction should be granted.

Dated:  July 8, 2016

Respectfully submitted,

Mark R. Cheskin
Florida Bar No.:  708402
mark.cheskin@hoganlovells.com
Carol A. Licko
Florida Bar No.:  435872
carol.licko@hoganlovells.com
James L. VanLandingham
Florida Bar No.:  106761
james.vanlandingham@hoganlovells.com
HOGAN LOVELLS US LLP
600 Brickell Avenue
Suite 2700
Miami, Florida  33131
Telephone:  (305) 459-6500
Facsimile:  (305) 459-6550

By:   /s/Mark R. Cheskin
        Mark R. Cheskin

*Counsel for Defendant J Choo USA, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 8, 2016, a true and correct copy of the foregoing

Motion to Dismiss was electronically filed with the Clerk of Court using CM/ECF.  Copies of

the foregoing document will be served upon interested counsel either via transmission of Notices

of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel

or parties who are not authorized to receive electronically Notices of Electronic Filing.


By:    /s/Mark R. Cheskin