**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 15-cv-81487-BB**

KERRI C. WOOD, individually and
on behalf of others similarly situated,

      Plaintiff,

v.

J CHOO USA, INC., d/b/a "Jimmy Choo",
a Delaware corporation,

      Defendant.
_____/

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT,**
**AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE PAYMENT**

## **TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................................................... 1

II.     SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT.................. 3

III.    SETTLEMENT TERMS.............................................................................................5
        A.      Notice and Settlement Administration.......................................................5
        B.      Incentive Payment.....................................................................................5

IV.     THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT............................. 5

V.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND
        THUS IT MERITS FINAL APPROVAL ...................................................................7
        A.      The Agreement Is the Result of Arm's Length Negotiations between the
                Parties with the Assistance of Experienced Mediators. ........................... 8
        B.      The Settlement Meets Each of the Eleventh Circuit's *Bennett* Factors. ........ 9
                1.      Likelihood of Success at Trial. ....................................................... 9
                2.      Range of Possible Recovery and the Point at which the Agreement
                        Is Fair, Reasonable, and Adequate........................................... 10
                3.      The Complexity and Expense of Further Litigation ................................. 11
                4.      Substance and Amount of Opposition to Agreement............................... 12
                5.      Stage of Proceedings at which Settlement Achieved ................................ 13

VI.     THE   ATTORNEYS'   FEE   AND   EXPENSES   REQUESTED   ARE
        REASONABLE ...................................................................................................... 13
        A.      The Fee Amount is Reasonable as a Percentage of the Total Settlement............ 15
        B.      The Fee and Expense Amount Is Also Reasonable Under the *Johnson/Camden I*
                Factors..........................................................................................16
                1.      The Time and Labor Required, Preclusion from Other Employment
                        and the Time Limits Imposed Justify the Cost and Fee Amount..............16
                2.      The Case Involved Difficult Issues; the Risk of Nonpayment
                        and Not Prevailing on the Claims was High ............................................ 17
                3.      Class Counsel Achieved an Excellent Result for the
                        Settlement Class........................................................................18
                4.      The Requested Fee is Consistent with Other Consumer
                        Class Settlements .........................................................................19
                5.      This Case Required a High Level of Skill .................................................19
        C.      The Requuested Incentive Payment is Reasonable................................. 20

VII.    SELECTION OF A CY PRES RECIPIENT AND RESOLVING REQUESTS
        FOR REIMBURSEMENT BY THIRD PARTIES FOR SUBPOENAS. ................. 20

VIII.   CONCLUSION ....................................................................................................... 21

## **TABLE OF AUTHORITIES**

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*,
   00-cv-14017, 2002 WL 1162422 (S.D. Fla. May 7, 2002)...........................................2, 13

*Agne v. Papa John's International Inc. et al*,
   2:10-cv-01139 (D. Wa.)....................................................................................................1

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,
   No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ......................10, 18

*Allapattah Servs., Inc. v. Exxon Corp.*,
   No. 91-cv-0986, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006)..............................12, 14, 19

*Atkinson v. Wal-Mart Stores, Inc.*,
   2011 WL 6846747 (M.D. Fla. Dec. 29, 2011)..................................................................19

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 543 (S.D. Fla. 1988).......................................................................................12

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984)....................................................................................*passim*

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)....................................................................................................13, 15

*Camden I Condo Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ...................................................................................*passim*

*Cooper v. NelNet, Inc.*,
   14-cv-314-RBD-DAB, Dkt. 85 (M.D. Fla. Aug. 4, 2015)................................................20

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ...........................................................................................2

*Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*,
   655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009) ...................................................................3

*De Los Santos v Millward Brown Inc.*,
   9:13-CV-80670-DPG (S.D. Fla. 2015) ............................................................................19

*Faught v. Am. Home Shield Corp.*,
   668 F.3d 1233 (11th Cir. 2011)....................................................................................6, 15

*Figueroa v. Sharper Image Co.*,

    517 F. Supp.2d 1292 (S.D. Fla. 2007) ............................................................ 11

*Francisco v. Numismatic Guar. Corp.*,

    No. 06-61677, 2007 U.S. Dist. LEXIS (S.D. Fla. Jan. 31, 2007) ..................................... 18

*Gevaerts v. TD Bank, N.A.*,

    No. 14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015) .... 14, 20

*Greco v. Ginn Dev. Co.*,

    2015 U.S. App. LEXIS 20867 (11th Cir. Dec. 2, 2015) ...................................................... 2

*Guarisma v. ADCAHB Medical Coverages, Inc., et al.*,

    1:13-cv-21016 (S.D.FL. June 24, 2015) ....................................................................... 19

*Gutter v. E.I. DuPont De Nemours & Co.*,

    No. 1:95–cv–02152–ASG, ECF 626 (S.D. Fla. May 30, 2003) ................................. 14, 19

*Hamilton v. SunTrust Mortg., Inc.*,

    2014 U.S. Dist. LEXIS 154762 (S.D. Fla. Oct. 24, 2014).......................................... 14, 16

*Hanlon v. Palace Entm't Holdings*, LLC,

    2012 U.S. Dist. LEXIS 364 (W.D. Pa. Jan. 3, 2012)...................................................... 11

*Harris v. Mexican Specialty Foods, Inc.*,

    564 F.3d 1301 (11th Cir. 2009) .................................................................................... 3, 4

*In re Checking Account Overdraft Litig.*,

    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................... *passim*

*In re CP Ships Ltd. Sec. Litig.*,

    578 F. 3d 1306 (11th Cir. 2009).................................................................................. 6, 16

*In re Domestic Air Transport. Antitrust Litig.*,

    148 F.R.D. 297 (N.D. Ga. 1993) ...................................................................................... 7

*In re Folding Carton Antitrust Litig.*,

    *MDL No. 250, 1991 U.S. Dist. LEXIS 2553 (N.D. Ill. Mar. 5, 1991)*.....................................21

*In re Mexico Money Transfer Litig.*,

    164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) ................................................................ 12

*In re Shell Oil Refinery*,

    155 F.R.D. 552 (E.D.La.1993)...................................................................................... 12

*In re Southwest Airlines Voucher Litig.*,
     No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Dec. 6, 2013) ........................ 17

*In re Sturm, Ruger & Co., Inc.*,
     No. 09cv1293, 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012)........................ 2

*In re Sunbeam Sec. Litig.*,
     176 F.Supp.2d 1323 (S.D. Fla. 2001) ...................................................................... *passim*

*In re Terazosin Hydrochloride Antitrust Litig.*,
     No. 1:99–md–01317–PAS, ECF 1557 (S.D. Fla. Apr. 19, 2005).............................. 14, 19

*In re U.S. Oil & Gas Litig.*,
     967 F.2d 489 (11th Cir. 1992) ............................................................................................ 7

*Ingram v. The Coca-Cola Co.*,
     200 F.R.D. 685 (N.D. Ga. 2001) ...................................................................................... 9

*Ira Holtzman, C.P.A., & Associates Ltd. v. Turza*,
     728 F.3d 682 (7th Cir. 2013) .......................................................................................... 20

*Isby v. Bayh*,
     75 F.3d 1191, 1200 (7th Cir. 1996) ...............................................................................17

*Johnson v. Georgia Highway Expr., Inc.*,
     488 F.2d 714 (5th Cir. 1974) .......................................................................................... 16

*Jones v. Nat'l Distillers*,
     56 F.Supp.2d 355 (S.D.N.Y. 1999)................................................................................ 21

*Katz v. ABP Corp.*,
     2014 U.S. Dist. LEXIS 141223 (E.D.N.Y. Oct. 3, 2014)................................................ 11

*Legg v. Laboratory Corp. of America*,
     14-cv-61543-RLR, Dkt. 227 (S.D. Fla. Feb. 18, 2016) .................................................. 19

*Lessard v. City of Allen Park*,
     470 F. Supp. 2d 781(E.D. Mich. 2007)........................................................................... 21

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*
     540 F.2d 102 (3d Cir. 1976)............................................................................................ 19

*Lipuma v. Am. Express Co.*,
     406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005) ......................................................... *passim*

*Long v. Joseph-Beth Grp., Inc.*,
>   No. 07-cv-00443 (W.D. Pa. May 5, 2007) ................................................................. 11

*Morrison v. Nat'l Australia Bank Ltd.*,
>   561 U.S. 247 (2010) ....................................................................................................... 6

*Mullane v. Cent. Hanover Bank & Trust Co.*,
>   339 U.S. 306 (1950) ....................................................................................................... 6

*Newman v. Sun Capital Corp.*,
>   No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug. 28, 2012) ................... 9

*North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.*,
>   1:13-cv-06897 (N.D. Ill.) ................................................................................................ 1

*North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.*,
>   1:13-cv-03105 (N.D. Ill.) ................................................................................................ 1

*Palamara v. Kings Family Restaurants*,
>   2008 U.S. Dist. LEXIS 33087 (W.D. Pa. Apr. 22, 2008) ............................................. 11

*Pinto v. Princess Cruise Lines, Ltd.*,
>   513 F. Supp. 2d 1334 (S.D. Fla. 2007) ......................................................................... 18

*Perez v. Asurion Co.*,
>   501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) .......................................................... 9, 12, 13

*Phillips Petroleum Co. v. Shutts*,
>   472 U.S. 797, 812 (1985) ................................................................................................ 7

*Phillips Randolph Enters., LLC v. Rice Fields*,
>   No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027 (N.D. Ill. Jan. 11, 2007) ..................... 10, 18

*Poertner v. Gillette Co.*,
>   618 F. App'x 624, 631 (11th Cir. 2015) ........................................................................ 15

*Redman v. Radioshack Corp.*,
>   768 F.3d 622 (7th Cir. 2014) ....................................................................................... 3, 4

*Spicer v. Chi. Bd. of Options Exchange, Inc.*,
>   844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) ............................................................... 20

*Spillman v. RPM Pizza, LLC*,
>   No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ............................ 1

*Stalcup v. Schlage Lock Co.*,

    505 F.Supp.2d 704 (D. Colo. 2007) ................................................................ 17

*Todd v. Retail Concepts Inc.*,

    2008 U.S. Dist. LEXIS 117126 (M.D. Tenn. Aug. 22, 2008) .......................... 11

*U.S. v. Alabama*,

    271 F. App'x 896 (11th Cir. 2008) ................................................................... 6

*Warren v. City of Tampa*,

    693 F.Supp. 1051 (M.D. Fla. 1988) ......................................................... 2, 7, 8

*Waters v. Int'l Precious Metals Corp.*,

    190 F.3d 1291 (11th Cir.1999) ....................................................................... 14

*Wolff v. Cash 4 Titles*,

    No. 03-cv-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ................... 14

*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*,

    1:12-cv-00780, (N.D. Ill) ................................................................................. 1

*Yates v. Mobile Cnty. Pers. Bd.*,

    719 F.2d 1530 (11th Cir. 1983) ...................................................................... 17

**Other Authorities**

Bureau of Justice Statistics, U.S. Dep't of Justice,

    *Victims of Identity Theft, 2014*, at 1 (Sept. 2015) ........................................ 3, 4

Javelin Strategy & Research, 2015 Identity Fraud: Protecting Vulnerable Populations ................ 3

McLaughlin on Class Actions

    §6:10 (10th ed.) .............................................................................................. 13

NEWBERG ON CLASS ACTIONS ................................................................... 15, 20

Presidential Signing Statement,

    Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003) .......................................3

The Role of Opt-Outs and Objectors in Class Action Litigation

    57 VAND. L. REV. 1529, 1550 (2004) ............................................................2

## I.    INTRODUCTION

Plaintiff, Kerri Wood, individually and as representative of the Settlement Class, submits this motion and memorandum in support of final approval of the class action settlement with Defendant, J Choo USA, Inc. d/b/a "Jimmy Choo" ("Jimmy Choo"), as to the claims asserted under the Fair and Accurate Credit Transaction Act (FACTA), which the Court preliminarily approved on January 23, 2017. [DE 80]. A true and correct copy of the Settlement Agreement and Release ("Agreement") is attached as *Appendix 1*.[1]

The Agreement provides Jimmy Choo will pay two-and-a-half million dollars ($2,500,000.00) to establish a Settlement Fund.  Class members were sent court-approved notice inviting them to submit a claim for a portion of the fund. *See Appendix 2* (Declaration of Claims Administrator) at ¶12. More than 2,700 people who were sent notice of the settlement have submitted timely valid claims, approximately 2% of the Class.[2] The claim rate here is consistent with the rate in many other consumer statutory damage cases that have been granted final approval,[3] and thus a strong endorsement of the settlement by the class. None of the settlement funds will revert back to Jimmy Choo.

The Court set March 17, 2017 as the date to submit exclusions and file objections. [DE 80, ¶9]. Out of approximately 135,000 class members, none objected. *Appendix 2* (Claims Administrator Declaration) at ¶¶ 6, 22. Also, no class members have requested exclusion. *Appendix 2* at ¶22]. Finally, no governmental entity objected to the settlement after receiving the required CAFA notice. Such an extraordinarily "low percentage of objections points to the reasonableness

---

[1] The Settlement Agreement attached as *Appendix 1* does not include exhibits.  The Settlement Agreement with exhibits was previously filed as DE 79-1.

[2] The Administrator has received significantly more than 2,700 claims, but is still evaluating the claims to eliminate any made by non-class members. Thus this percentage may increase but will not decrease.

[3] *See, e.g.*, *Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 12-cv-780, (N.D. Ill) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharma. (USA) Inc.,* 13-cv-3105 (N.D. Ill.) (.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.,* 13-cv-6897 (N.D. Ill.) (.53% of the class made claims); *Agne v. Papa John's Int'l, Inc.*, 10-cv-1139 (D. Wash.) (1.52% of the class made claims); *Spillman v. RPM Pizza, LLC*, 10-cv-349 (M.D. La.) (.07% of the class made claims).

of a proposed settlement and supports its approval." *Lipuma v. American Express Co*., 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005).[4]

As shown below, this settlement clearly meets the standards for final approval. In granting preliminary approval, the Court preliminarily found the Agreement was within the range of reasonableness, and thus that the class should be given notice. [DE 80, ¶1]. Nothing has changed to alter that finding. To the contrary, the class's reaction to the settlement has indicated strong support for the Agreement.

The Agreement is the result of arm's-length negotiations between Jimmy Choo and experienced Class Counsel, and was only reached after engaging in discovery, motion practice, and a mediation with Jay Cohen, an experienced mediator. As a result, the Agreement is presumptively fair, reasonable and adequate. *In re Sturm, Ruger & Co., Inc.*, 2012 U.S. Dist. LEXIS 116930 at *12 (D. Conn. Aug. 20, 2012) ("the settlement was reached by experienced, fully-informed counsel after arm's length negotiations with the assistance of a mediator and therefore the parties are entitled to a presumption that the settlement was fair, reasonable and adequate.")

Likewise, although the approval of a class action settlement is a matter for the Court's discretion, proper consideration should be given to the consensual decision of the parties. *See Greco v. Ginn Dev. Co.*, 2015 U.S. App. LEXIS 20867 at *9 (11th Cir. Dec. 2, 2015) (unpub.) ("a district court may also rely upon the judgment of experienced counsel for the parties. . . . Indeed, absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'"), quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988) *aff'd*, 893 F.2d 347 (11th Cir. 1989) ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Ultimately, a class action settlement should be approved if it is fair, reasonable and adequate, and not the product of

---

[4] The average number of objections to consumer class action settlements is 233. In a settlement of this magnitude, the Court should expect to receive around 11 objections (extrapolating from the average of 4.7 objectors per $1 million in consumer recovery). *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1550 (2004).

2

collusion. *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984); *Access Now, Inc. v. Claire's Stores, Inc.*, 2002 WL 1162422 at *4 (S.D. Fla. May 7, 2002). When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1329 (S.D. Fla. 2001). As shown below, this settlement clearly merits final approval.

## II.   SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT

FACTA "is aimed at protecting consumers from identity theft." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). The inclusion of excess account information on a transaction receipt enables anyone who sees the receipt to use it to discover more information about the consumer. *See Redman v. Radioshack Corp.*, 768 F.3d 622, 626 and 639 (7th Cir. 2014) ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information"). In signing FACTA into law, President Bush likewise remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009), *subsequently rev'd on other grounds*, 444 F. App'x 370 (11th Cir. 2011), citing Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

At that time, identity theft had "reached almost epidemic proportions." H.R. Rep. No. 108-263 at 25 (2003). Over 27 million Americans had been victims of identity theft in the past five years, and the estimated cost to consumers and the economy was over fifty billion dollars annually. *See* Federal Trade Commission, *Identity Theft Survey Report* (2003).[5] Every year, identity theft results in billions of dollars of loss, which has a significant effect on consumers and the economy. *See* 2015 Identity Fraud Report, *infra* fn.7, at pp.7, 14.[6] Furthermore, the costs of financial fraud,

---

[5] In 2014 and 2013, respectively, about 12.7 million and 13.1 million consumers suffered identity theft. See Javelin Strategy & Research, 2015 Identity Fraud: Protecting Vulnerable Populations, available at https://www.javelinstrategy.com/press-release/16-billion-stolen-127-million-identity-fraud-victims-2014-according-javelin-strategy. [2015 Identity Fraud Report]. In 2010, about 7% of households had at least one member who experienced one or more types of identity theft. Bureau of Justice Statistics, U.S. Dep't of Justice, Identity Theft Reported by Households, 2005-2010, at 1 (Nov. 2011).

[6] In addition, according to a 2015 FTC report, Florida ranks No. 3 for identity theft among the 50 states, with 300.7 complaints per 100,000 people. Also, six of the top twenty metro areas for

identity theft, and even the fear of identity theft, have a powerful psychological effect on consumers, as "36% of identity theft victims reported moderate or severe emotional distress as a result of the incident." Bureau of Justice Statistics, U.S. Dep't of Justice, *Victims of Identity Theft, 2014*, at 1 (Sept. 2015).

To help address this problem, Congress decided *inter alia* to "require the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information," to prohibit the printing of credit and debit card expiration dates on point-of-sale receipts, and to thereby "limit the number of opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166, at pp. 3 and 13 (2003). Accordingly, Congress created FACTA. *See Redman*, 768 F.3d at 639 ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.").

Moreover, to encourage private litigants to enforce FACTA's requirements, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA"), which entitles a successful plaintiff to statutory damages, costs and attorneys' fees for any "willful" violation of the law. *See Harris, Inc.,* 564 F.3d at 1306-7, *citing* 15 U.S.C. §1681n(a)(l)(A), and (2). Consistent with this intent, Plaintiff brought this lawsuit to resolve Jimmy Choo's alleged systematic violation of FACTA's prohibition against printing credit and debit card expiration dates on transaction receipts issued at it's retail stores in the United States. [DE 1].

Plaintiff alleged that she was one of a nationwide class of consumers who made point of sale purchases at a Jimmy Choo store in the United States and received a printed receipt that displayed their credit card or debit card expiration date.  Plaintiff asserted claims for willful violations of FACTA. *Id.*  Jimmy Choo answered the Complaint and denied Plaintiff's claims of liability and damages. [DEs 13, 56].

This contentious litigation has included extensive conferral regarding the nature and accessibility of Defendant's electronically stored information, discovery, discovery motions including filing an action in the District of Nevada to enforce a subpoena, and a court-ordered mediation. *See e.g.* [DEs 20-25, 27, 36, 40, 41]   The Settlement negotiations began at a court-

---

identity      theft      are      in      Florida,      according      to      the      report. https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-january-december-2015/160229csn-2015databook.pdf (Last accessed: February 20, 2017).

ordered mediation and continued for several months.  Despite their significant differences, the Parties have been able settle this action on behalf of a nationwide Settlement Class comprised of all persons in the United States (i) who, when making a transaction at a Jimmy Choo store (ii) using a credit or debit card (iii) received a printed receipt which displayed the expiration date of said credit or debit card (iv) between October 27, 2013, and November 2, 2015.  The parties have determined that there are approximately 135,000 persons who meet this Settlement Class definition.  A copy of the settlement agreement is attached as *Appendix 1*.

On January 23, 2017, the Court granted the settlement preliminary approval, and directed that notice be sent to the class members. [DE 80].

## III.   SETTLEMENT TERMS

The Agreement provides that Jimmy Choo shall pay 2.5 million dollars ($2,500,000.00). *Appendix 1*, § III.B. Due to the substantial claim rate, a Settlement Class Member who properly and timely made a claim will receive a pro rata share of the net settlement fund, or more than $300.00. Also, this amount may increase (but not decrease) as the class administrator is still evaluating claims to confirm how many were filed by actual class members. *Appendix 2*, ¶21.  In addition to the payments to class members, Jimmy Choo also agreed to the following:

**A.   Notice and Settlement Administration.** Jimmy Choo agreed to pay the cost of the Notice Plan, including the cost of setting up and maintaining a settlement website to give class members additional information about the settlement and a convenient means to submit a claim, as well as the cost of postage for mailing the notice and settlement payments to class members. The final notice and administration costs are estimated to be $150,000. *Appendix 2* at ¶25.

**B.   Release.** In exchange for the above relief, the release is limited to claims related to or arising out of the claims which were made or could have been made in this Litigation. *Appendix 1* at § VI.

## IV.   THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT.

Federal Rule 23 requires a court to direct to class members "the best notice that is practicable under the circumstances" describing, among other things, the action, the class certified, and class members' right to exclude themselves. Fed. R. Civ. P. 23(c)(2)(B). Further, before granting final approval to a proposed class settlement, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

5

Finally, the Due Process Clause also guarantees unnamed class members the right to notice of a class settlement. *U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008).

To satisfy these requirements, the notice must be calculated to "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *Id.* at 901; *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1317 (11th Cir. 2009), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"), *quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations omitted). Moreover, neither Rule 23 nor due process requires that all class members receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). Instead, to determine whether the notice is sufficient, courts "look solely to the language of the notices and the manner of their distribution." *Alabama*, 271 F. App'x at 901, *quoting Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007).

The plan approved by the Court here provided exceptional notice that exceeds Rule 23 and due process requirements. In granting preliminary approval to the notice plan, this Court found: "The Court has considered the Class Notice, attached as Exhibits B and C to the Agreement, including the proposed forms of notice, Summary Notice, Full Notice, and Settlement Claim Certification Form, and finds that the forms, content, and manner of notice proposed by the Parties and approved herein meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice." [DE 80, ¶ 7]. These conclusions remain correct as evidenced by the strong claim rate.

The Claims Administrator followed the Court-approved notice and claims procedures. It sent direct mail notice to every identified class member for which an address was provided and

email notice to every class member whose email address was provided.[7] *Appendix 2*, at ¶¶7-12. It also set up the settlement website as well as the toll-free number for class members to call with any questions or request that a claim form and long form notice be mailed to them. *Appendix 2*, at ¶¶13, 20. To bolster the notice plan, the Claims Administrator also ran banner ads about the settlement on more than 28,000 websites. Viewers who clicked the ads were taken to the settlement website, where they could view the notice, file a claim, and find answers to any questions about the lawsuit, the settlement or the claims process. *Appendix 2*, ¶13.

As of February 21, 2017, the website has been visited 23,838 times, with 42,996 page views. *Appendix 2* at ¶19. As of February 23, 2017, the Claims Administrator's toll-free Voice Response Unit has handled a total of 165 phone calls from persons seeking information about the case. *Appendix 2* at ¶20. In addition, the CAFA notice of the settlement was sent the U.S., state and other attorneys' general as required. *Appendix 2* at ¶5.

Class members have until March 17, 2017, to request exclusion, object, or submit a claim. [DE 80, ¶¶9,17]. As noted above, an estimated more than 2,700 claims have been filed to date, no class members have requested exclusion, and no class members have objected. *Appendix 2* at ¶¶21,22. No governmental entity objected in response to the CAFA notice. In short, the notice complies with the court-approved plan, exceeds Rule 23 and Due Process, and fully apprised the class of all material terms, how to obtain additional information and how to exercise their rights. By all accounts, the notice plan was not just adequate; it was a success.

## V.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THUS IT MERITS FINAL APPROVAL

Judicial and public policy favor the voluntary settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren*, 693 F. Supp. at 1054. ("[S]ettlements are highly favored in the law."). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

---

[7] Direct mail notice to potential class members, standing alone, is generally sufficient. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out,' [that] satisfies due process.")

Although approval of a settlement is a matter within the Court's discretion, some deference should be given to the consensual decision of the Parties. *See Warren*, 693 F.Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation."). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett*, 737 F.2d at 986 (11th Cir. 1984).

When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001). In determining whether a settlement is "fair, adequate, and reasonable," the following factors are generally considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. In addition, the Court makes an inquiry into "whether the settlement was procured by collusion among the parties or was the result of arms–length and informed bargaining." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1329 ("In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.")

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted).

Here, the Agreement easily passes both tests, having been the product of arm's length, informed negotiations between the parties with the assistance of a neutral mediator, and satisfying each of the Eleventh Circuit's *Bennett* factors.

### A.   The Agreement Is the Result of Arm's Length Negotiations between the Parties with the Assistance of an Experienced Mediator.

The context in which the Agreement was reached confirms that it was the result of arms-length and informed negotiations among the parties, and not collusion.

To start, the Agreement only came about after the discovery and motion practice discussed above. The work put into the case gave experienced counsel ample information about the case

facts and the chance of success, to enable them to evaluate the terms of any proposed agreement, and thus ensure a fair compromise. *See Appendix 3* Lehrman Decl., ¶ 14. Even then, the parties conducted an in-person mediation session by a highly experienced neutral, Jay Cohen. This further demonstrates there was no collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of …. a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011) (no collusion where settlement reached by capable and experienced counsel and with the assistance of a well-qualified and experienced mediator).

As such, it is clear the Agreement is the result of arms-length and informed negotiation between the parties, not collusion, and thus the Court should not hesitate to approve it.

**B.     The Settlement Meets Each of the Eleventh Circuit's *Bennett* Factors.**

In addition to being the product of arm's length negotiations, the Agreement also satisfies each of the *Bennett* factors.  It is important to keep in mind that "[i]n evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* Here, as explained below, each of the *Bennett* factors weighs in favor of granting final approval.

**1.     Likelihood of Success at Trial.**

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial. "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma*, 406 F. Supp.2d at 1319. Where success at trial is not certain for a plaintiff, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital Corp.*, No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 at *30 (M.D. Fla. Aug. 28, 2012).

Here, Plaintiff's and the class members' ultimate success is far from guaranteed. Class Counsel is confident in the strength of the claims alleged. Nevertheless, litigation is inherently unpredictable and the outcome of a trial is unpredictable.

Indeed, Plaintiff and the class members face significant risks in proceeding, including the

9

possibility that class certification may be denied, the case may be defeated at the summary judgment stage, and of course the possibility that the jury concludes that Jimmy Choo's alleged violation of FACTA was not willful. Jimmy Choo is represented by competent and formidable trial counsel.

Also, some courts view awards of aggregate, statutory damages with skepticism and would reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation—would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.") Jimmy Choo raised this argument which, if ultimately accepted, could considerably affect the class's potential recovery.[8] Finally, Plaintiffs recognize the expense, duration, and complexity of continued litigation would be substantial and possibly require further briefing on numerous substantive issues, extensive trial preparation, and appeal. *See Appendix 3* Lehrman Decl. at ¶ 15.

Against the inherent uncertainty raised by these issues is the substantial and concrete cash relief the class members will receive under the Agreement. Plaintiff expected no significant opposition to it by the class and in fact, Plaintiff was correct. Weighing the strengths of the claims against the legal and factual obstacles, and the complexity of class action practice, there is no doubt that this settlement is in the class members' best interests.[9] As such, the first *Bennett* factor weighs in favor of approving it.

### 2.      Range of Possible Recovery and the Point at which the Agreement Is Fair, Reasonable, and Adequate

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined.  *In*

---

[8] *But see Phillips Randolph Enters., LLC v. Rice Fields*, 2007 U.S. Dist. LEXIS 3027 at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

[9] *See Appendix 3* Lehrman Decl. at ¶14; *Appendix 4* Owens Decl. at ¶33; and *Appendix 5* Lusskin Decl. at ¶13.

*re Sunbeam*, 176 F. Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F. Supp.2d 1292, 1326 (S.D. Fla. 2007), *quoting Lipuma*, 406 F. Supp.2d at 1322. However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp.2d at 1326.

The monetary relief secured on behalf of the class is substantial. Each class member who submitted a valid claim will receive at least $300.00 in cash. This is plainly fair, reasonable and adequate, as the relief here compares favorably with the potential per-class-member benefit conferred in other FACTA class settlements that received final approval. *See*, *e.g.*, *Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223 at *2 (E.D.N.Y. Oct. 3, 2014) (FACTA class settlement that gives class members a choice to make a claim for $9.60 in cash or a coupon for $15 off of future purchases from defendant); *Hanlon v. Palace Entm't Holdings*, LLC, 2012 U.S. Dist. LEXIS 364 at *14-*15 (W.D. Pa. Jan. 3, 2012) (FACTA class settlement that provides the class with admission tickets to defendant's amusement park); *Todd v. Retail Concepts Inc.*, 2008 U.S. Dist. LEXIS 117126 at *16 (M.D. Tenn. Aug. 22, 2008) (FACTA class settlement providing a $15 credit on class members' next purchase of $125 or more); *Palamara v. Kings Family Restaurants*, 2008 U.S. Dist. LEXIS 33087 at *9-*10 (W.D. Pa. Apr. 22, 2008) (FACTA class settlement providing vouchers worth an average of $4.38 each to get appetizers, soup, desserts and other small menu items when visiting the defendant's restaurants in future); *Long v. Joseph-Beth Grp., Inc.,* No. 07-cv-00443 (W.D. Pa. May 5, 2007) (A class of 400,000 members could claim a $5 voucher.)[10] Accordingly, the settlement exceeds the range of what is fair, reasonable and adequate. The second and third *Bennett* factors are met.

### 3.    The Complexity and Expense of Further Litigation

The next factor is the complexity and expense of further litigation. In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted

---

[10] Although FACTA provides a potential recovery of $100 to $1,000 *if* the violation is willful, this does not take into consideration the risk of losing on the merits, the risk of losing a due process challenge to the aggregate statutory damages award or the risk of losing class certification. Factoring in these risks necessitates a discounted recovery.

and expensive litigation." *Lipuma*, 406 F. Supp.2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp.2d at 1381, *quoting Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, 543 (S.D. Fla. 1988).

This factor favors approval of the Agreement because the expense and complexity of further litigation would be substantial. Further litigation would include a contested motion for class certification, potential cross motions for summary judgment, additional pretrial motion practice, preparing the final pretrial order, conducting the final pretrial conference, and conducting a trial. Given the stakes, an appeal is likely regardless of which party wins. Moreover, continued litigation delays the case's resolution, imposes additional substantial expense on both sides, and consumes substantial additional judicial resources. When, as here, additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323, *quoting In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.") In sum, the complexity, expense, and duration of remaining litigation favors the approval of the Agreement.

### 4.    Substance and Amount of Opposition to Agreement

The next *Bennett* factor is the substance and amount of opposition to the Agreement.  Here, out of about 135,000 class members, none have yet filed an objection or sought exclusion. *Appendix 2* at ¶22. These facts, combined with a typical claim rate by the rest of the class, shows that this factor weighs fully in support of granting final approval. *See Lipuma*, 406 F.Supp.2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347 at *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair."); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (fact that more than "99.9% of class members have neither opted out nor filed objections is strong circumstantial evidence in favor of the settlement"), *aff'd.*, 267 F.3d 743 (7th Cir. 2001)); 2 McLaughlin on Class Actions §6:10 (10th ed.) ("Courts have generally assumed that 'silence constitutes tacit consent to the

12

agreement,' so that the absence of objectors or receipt of a relatively small number of objections and opt-outs supports the conclusion that the settlement is adequate.") (citation omitted).

### 5.    Stage of Proceedings at which Settlement Achieved

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. This factor is used "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp.2d at 1383; *see also Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-cv-14017, 2002 U.S. Dist. LEXIS 28975 at *21 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action."); *In re Sunbeam*, 176 F. Supp.2d at 1332 ("Obviously, the case had progressed to a point where each side was well aware of the other side's position and the merits thereof.  This factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable.")

Here, the Agreement was not reached until after written discovery, a motion to compel, service of a subpoena on a non-party in another district, document review, multiple status conferences with the District Court, and an in-person mediation before a professional neutral. Class Counsel ensured they had sufficient information about the allegations of the complaint, the class size, and the range of the class's potential damages. Hence, there should be no question that, by the time the Agreement was reached, Class Counsel had enough information to evaluate the strength of the class claims and weigh the benefits of the Agreement against continued litigation. In sum, the *Bennett* factors weigh in favor of final approval.

## VI.    THE ATTORNEYS' FEE AND EXPENSES AND INCENTIVE PAYMENT REQUESTED ARE REASONABLE

In the Eleventh Circuit, "it is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp.2d at 1358, *citing Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The reasonableness of the fee sought is confirmed by examining it both as a percentage of the total settlement, as well as the various factors established for evaluating attorney fee requests

(including the "Johnson" or "Camden I" factors). *Camden I Condo. Ass'n*, 946 F.2d at 774-775.

### A.      The Fee Amount Is Reasonable as a Percentage of the Total Settlement

"In the Eleventh Circuit, 'attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'" *Hamilton v. SunTrust Mortg., Inc.*, No. 13-60749-CIV-COHN, 2014 U.S. Dist. LEXIS 154762 at *20-*21 (S.D. Fla. Oct. 24, 2014), *quoting Camden I Condo*, 946 F.2d at 774. Also, as this Court specifically noted, "federal district courts across the country have, in the class action settlement context, routinely awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases." *Hamilton*, 2014 U.S. Dist. LEXIS 154762 at *21 (collecting cases); *see also Camden I*, 946 F.2d at 774-775 ("an upper limit is 50%"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir.1999) (affirmed award of 33.3%). *See, e.g., Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Gevaerts* 2015 U.S. Dist. LEXIS 150354 at *29 (discussing the range of reasonableness for fee requests)[11].

The fee and expense award here easily falls within the range of reasonableness. The mailed notice, long form notice and website all specifically set out both the amount and corresponding percentage of the attorney fees that were to be requested, which are "not to exceed one third of the fund, which is $833,333.33, plus expenses." *Appendix 1*, at *Exhibits 2, 3*. The notice also advised that counsel would seek reimbursement of their expenses, and here Class Counsel seeks $7,156.11 in out-of-pocket expenses incurred in prosecuting this case, which consist of mediation fees, filing fees, printing and copying costs and related matter. *See Appendix 3* Lehrman Decl. at ¶ 6.

The requested fee and expense amount is reasonable given the substantial monetary

---

[11] *See Checking Account Overdraft Litig.* 830 F. Supp.2d 1330, 1344 (S.D. Fla. 2011)("Numerous recent decisions within this Circuit have awarded attorneys' fees up to (and at times in excess of) 30 percent. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % of settlement of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 U.S. Dist. LEXIS 27228, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-Civ-Gold, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement of $77.5 million); and *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million).

recovery alone, but the reasonableness of the request is further enhanced by the non-monetary benefits this case conferred upon the class. *See Faught*, 668 F.3d at 1244-1245 (fee and cost award reasonable in part because "the $1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class.") Specifically, in direct response to this lawsuit, Jimmy Choo reprogrammed its retail point-of-sale system nationwide to stop printing credit card and debit card expiration dates on transaction receipts.

Indeed, the Eleventh Circuit affirmed the approval of a $5.68 million attorneys' fee award when the class only claimed $344,850 and there was nonmonetary relief. *Poertner v. Gillette Co.*, 618 F. App'x 624, 631 (11th Cir. 2015) (unpub.). The Eleventh Circuit looked at the amount made available, the value of all of the factors and held:

> While no published opinion of ours extends Camden I's percentage-of-recovery rule to claims-made settlements, no principled reason counsels against doing so. For, as one learned treatise aptly illustrates, properly understood "[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant"; indeed, the two types of settlements are "fully synonymous." 4 Rubenstein, *Newberg on Class Actions* § 13:7.

*Id.* at 628 fn. 2. The Eleventh's Circuit's decision in *Poertner* is in accord with *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In *Boeing*, the Supreme Court rejected the notion that the fee award should be limited to the amount of funds claimed by the class members.[12] Instead, the Supreme Court held that fees should be based on the amount made available:

> Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery Since the benefits of the class recovery have been "traced with some accuracy" and the costs of recovery have been "shifted with some exactitude to those benefiting."

*Id* at 480-81. This Court has echoed this principle. *Hamilton*, No. 13-60749-CIV-COHN, 2014 U.S.

---

[12] "Boeing appealed only one provision of the judgment. It claimed that attorney's fees could not be awarded from the unclaimed portion of the judgment fund for at least two reasons. First, the equitable doctrine that allows the assessment of attorney's fees against a common fund created by the lawyers' efforts was inapposite because the money in the judgment fund would not benefit those class members who failed to claim it." *Id* at 480.

Dist. LEXIS 154762 at *19 ("A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims.").

In this case, not a penny goes back to Jimmy Choo. In other words, the entire net settlement fund will be distributed to class members who make claims, and so regardless of the number of claims (which in this case, were quite high), counsel's fees are a percentage of the true amount being paid out.

Finally, and perhaps most significantly, not a single class member has objected to counsel's fee and expense request. As a percentage of the settlement, the fees and expenses sought are reasonable.

### B.    The Fee and Expense Amount Is Also Reasonable Under the *Johnson/Camden I* Factors.

In cases in which the fees sought exceed 25% of the settlement, the Eleventh Circuit endorses using the factors articulated *Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974), to confirm the reasonableness of fee request. *See Camden I Condo. Ass'n*, 946 F.2d at 775. The *Johnson/Camden I* factors are (1) the time and labor required;[13] (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772, n.3. Class counsel are experienced class action litigators with excellent reputations, who expended hundreds of hours on the instant case, worked on a purely contingent basis, and produced an excellent outcome for the class. *Appendix 3* Lehrman Decl., ¶¶ 4-12.  These factors confirm the reasonableness of counsel's fee and expense request.

### 1.    The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Cost and Fee Amount.

The first, fourth, and seventh *Johnson/Camden I* factors – the time and labor, preclusion of other employment, and time limitations imposed, respectively – are interrelated inquires and each

---

[13] The Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions ... "[and] [t]he lodestar approach should not be imposed through the back door via a 'cross-check.'"  *In re CP Ships Account Overdraft Litig.*, 830 F. Supp. 2d at 1362.

16

support the reasonableness of the request. This case has been pending since 2015 and Class Counsel had to engage in substantial litigation against a well-heeled defendant and sophisticated defense counsel to reach the Settlement.

The work was extensive. As noted above, counsel conducted written discovery, non-party discovery, and considerable motion practice. All of the work necessitated by this case diverted the time and resources from other matters. *See Yates v. Mobile Cnty. Pers. Bd*., 719 F.2d 1530, 1535 (11th Cir. 1983) (The expenditure of time necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award.); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.")

Finally, and perhaps most tellingly, no class member objected to class counsel's effort or the proposed fee and expense award, even though the notice explicitly told the class of both the percentage and the fee amount sought. Even if objections are subsequently filed, they cannot justify upending the subject fee and expense request, particularly since more than 2,700 persons who submitted a claim support approval of the settlement. *See, e.g., Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (affirming final approval where 13% of the class submitted written objections); *In re Southwest Airlines Voucher Litig*., No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement").

### 2. The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High.

The second, sixth, and tenth *Johnson/Camden I* factors—the novelty and difficulty of the issues, whether the fee is contingent, and the "undesirability" of the case, respectively—are also interrelated and support the requested cost and fee award.

This case is novel on several levels. First, it is an open issue as to what evidence it takes to prove that Jimmy Choo "willfully" violated the law. In addition, assuming that Plaintiff prevailed and proved a "willful" violation, the resulting damage award is also a novel issue. Also, as noted above, at least some courts view awards of aggregate, statutory damages with skepticism and consider reducing such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano,* 2011 U.S. Dist. LEXIS 48323, at *13 ("Such an award, although

17

authorized by statute, would be shocking, grossly excessive, and punitive in nature.")[14]

In addition, the ability to recover fees and expenses here has always been contingent on a successful outcome. Counsel had to advance the fees and expenses, and risked receiving nothing in return. This is important because "[a] determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d 1364, *quoting In re Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1335. Accordingly, some courts have observed that "[a]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618 at *35 (S.D. Fla. Jan. 30, 2007), *citing Pinto,* 513 F. Supp.2d at 1339.

The case's novelty and contingent nature also demonstrate its undesirability. Few lawyers will take a case that consumes significant attorney time, involves uncertain questions, and requires them to advance substantial out-of-pocket expenses and risk getting nothing, especially when the prior class settlements under FACTA provided very little incentive to take these cases.

Although Class Counsel achieved a favorable result, that was anything but certain when they took the case. Thus, these factors all weigh in favor of approving the fee and expense amount. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight"), citing *Lindy Bros. Bldrs. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976).

### 3.  Class Counsel Achieved an Excellent Result for the Settlement Class.

The eighth *Johnson/Camden I* factor looks to the amount involved in the litigation with particular emphasis on the "monetary results achieved" in the case by class counsel.  *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185, 1202 (S.D. Fla. 2006).

---

[14] *But see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

18

Here, the parties' mediated Agreement provides a Settlement Fund of $2,500,000, and the class has approximately 135,000 members. Once again, each class member who submits a valid claim will receive at least $300.00 which, as noted above, is far greater than the recoveries in other FACTA settlements that were granted final approval. This factor thus weighs strongly in favor of approving the fee and expense amount.

### 4.   The Requested Fee is Consistent with Other Consumer Class Settlements.

The fifth and twelfth *Johnson/Camden I* factors, the customary fee and awards in similar cases supports approval. There are plenty consumer class actions, including a recent FACTA case in this District, that awarded one third of the settlement amount for fees, and most were more desirable than this case because the plaintiffs did not have to prove willfulness to recover. *See Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *De Los Santos v Millward Brown Inc.*, 13-cv-80670-DPG (S.D. Fla. 2015) (awarding one-third of gross recovery for attorneys' fees); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-md-01317-PAS, Dkt. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding "33 1/3% of the gross Settlement Fund (plus interest thereon), arising out of the Settlement, before deduction of any costs, expenses, or incentive awards, as their fee award."); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 95-cv-02152-ASG, Dkt. 626 at 7 (S.D. Fla. May 30, 2003) (approving fees of one-third of gross amount of the settlement fund, plus $1.2 million in expenses); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747 at *6 (M.D. Fla. Dec. 29, 2011) (approving fee award of one-third of gross amount of the common fund); *Guarisma v. ADCAHB Medical Coverages, Inc., et al.*, 13-cv-21016, Dkt. 95 (S.D. Fla. June 24, 2015) (awarding one third of the fund, plus costs). Accordingly, this factor also favors the proposed fee and expense award.

### 5.   This Case Required a High Level of Skill.

The remaining *Johnson/Camden I* factors – the skill required to perform the legal services properly, and the experience, reputation, and ability of the attorneys, all confirm that the fees and expenses sought are reasonable.  As shown, Class Counsel achieved a settlement that confers substantial monetary and non-monetary benefits on the class despite hard fought litigation against a sophisticated and well-financed defendant represented by top-tier counsel. *See In re Sunbeam Sec.*

*Litig.,* 176 F.Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.")

This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope and complexity. Class Counsel regularly engage in complex litigation involving consumer issues, and they have been appointed class counsel in numerous cases. *See Appendix 3* Lehrman Decl. at ¶ 4, Exhibit A; *Appendix 4* Owens Decl. at ¶¶ 18-26; and *Appendix 5* Lusskin Decl. at ¶ 11. Thus, the *Johnson/Camden I* factors confirm the mediated attorneys' fee and expense award is reasonable. Pursuant to Fed. R. Civ. P. 23(h), 52(a) and 54(d)(2), it should be approved.

### C.  THE REQUESTED INCENTIVE PAYMENT IS REASONABLE

Plaintiff has requested an incentive payment of $5,000 for her service to the class in addition to any recovery that she is entitled to as a Settlement Class Member. This is well within the range of reasonableness. *See Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354 at *25-*26 (S.D. Fla. Nov. 5, 2015) ($10,000 incentive award each to two sets of plaintiffs), citing *Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff); *see also Cooper v. NelNet, Inc.*, 14-cv-314-RBD-DAB, Dkt. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) ($25,000 incentive award).[15]

## VII.   SELECTION OF CY PRES RECIPIENTS

The Agreement calls for the distribution of the entire net settlement fund to the Settlement Class Members but, if any payments remain uncashed after 90 days and the total amount of these unclaimed payments is too small to feasibly redistribute to the rest of the class, the Agreement provides that this remainder should be paid to *cy pres* recipients on behalf of the class. *Appendix 1*, § III.E.2.iii. The proposed *cy pres* designees, Legal Aid Service of Broward County, Coast to Coast Legal Aid of South Florida and the National Consumer Law Center, each have significant

---

[15] The Seventh Circuit was recently critical of a $7,500 incentive award as being too small. *Ira Holtzman, C.P.A., & Associates Ltd. v. Turza*, 728 F.3d 682, 690 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1318 (2014) (describing the award as a "disincentive" award); *see also See also* Conte and Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.) Indeed, "since without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses."

records of providing free civil legal representation, education, and advocacy to low income people on consumer issues.  See *Appendix 6* Declaration of Debra T. Koprowski, Director of Advocacy for Legal Aid Service of Broward County; *Appendix 7* Declaration of Barbara J. Prager, Executive Director of Coast to Coast Legal Aid of South Florida; and *see* https://www.nclc.org/special-projects/special-projects.html (describing the work performed by the National Consumer Law Center to address consumer law issues facing low-income Americans)(last accessed on February 23, 2017).   Courts have recognized that the approval of cy pres awards to legal aid and organizations that seek access to justice for low-income, underserved, and disadvantaged people is an appropriate use of the *cy pres* doctrine and undistributed settlement monies in consumer class actions. *See, e.g. Lessard v. City of Allen Park*, 470 F. Supp. 2d 781, 783-84 (E.D. Mich. 2007); *Jones v. Nat'l Distillers*, 56 F.Supp.2d 355, 359 (S.D.N.Y. 1999); and *In re Folding Carton Antitrust Litig.*, MDL No. 250, 1991 U.S. Dist. LEXIS 2553, at *7-8 (N.D. Ill. Mar. 5, 1991). Accordingly, there is a reasonable basis to support the Court's exercise of discretion to approve the proposed *cy pres* distribution to Legal Aid Service of Broward County, Coast to Coast Legal Aid of South Florida and the National Consumer Law Center.

**VIII.   CONCLUSION**

This Agreement provides substantial and immediate cash benefits for the Class, it is the result of arm's length, informed negotiations with the assistance of an experienced mediator, it satisfies each of the six *Bennett* factors, and class counsel's fee and expense is both a reasonable percentage of the Settlement and it satisfies the *Johnson/Camden I* factors. The settlement, counsel's fee and expense request, and the requested incentive payment are all fair, reasonable and adequate under Rule 23, and thus Plaintiff respectfully requests that this Court enter an order granting them final approval. A draft Final Approval Order will be filed before the Final Approval Hearing.

Dated:  February 23, 2017                    Respectfully submitted,

                                             */s/ Seth M. Lehrman*
                                             Seth M. Lehrman (Fla. Bar No. 132896)
                                             E-mail: seth@pathtojustice.com
                                             Steven R. Jaffe (Fla. Bar No. 390770)
                                             E-mail: steve@pathtojustice.com
                                             FARMER, JAFFE, WEISSING,
                                             EDWARDS, FISTOS & LEHRMAN, P.L.

425 N. Andrews Ave., Suite 2
Fort Lauderdale, Florida 33301
Telephone:  (954) 524-2820
Facsimile:  (954) 524-2822

Scott D. Owens (Fla. Bar No. 0597651)
E-mail: scott@scottdowens.com
Patrick Crotty (Fla. Bar No. 108541)
E-mail: patrick@scottdowens.com
Sean Holas (Fla. Bar No. 115483)
E-mail: sean@scottdowens.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive
Hollywood, FL 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666

Bret L. Lusskin, Jr., Esq. (Fla. Bar No. 28069)
E-mail: blusskin@lusskinlaw.com
BRET LUSSKIN, P.A.
20803 Biscayne Blvd., Ste. 302
Aventura, FL 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

*/s/ Seth M. Lehrman*
Seth M. Lehrman, Esq.

22