UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-81487-BLOOM/Valle

KERRI C. WOOD, individually and
on behalf of all others similarly situated,

                Plaintiff,

v.

J CHOO USA, INC.,
d/b/a JIMMY CHOO

                Defendant.

## MOTION OF ERIC ALAN ISAACSON FOR LEAVE TO APPEAR AS AMICUS CURIAE AND INCORPORATED MEMORANDUM OF LAW

    Eric Alan Isaacson respectfully seeks leave to appear as amicus curiae in this matter, in which he has an interest as a longtime member of the plaintiffs' class action bar, and as an objector in a matter currently pending before the Eleventh Circuit Court of Appeals that raises issues overlapping those currently before this Court on plaintiff's motion for settlement approval and award of attorneys' fees.  *See* Exhibit A hereto, [Corrected] Opening Brief of Appellant Eric Alan Isaacson, No. 16-16486 (11th Cir. 2017).

    No party or objector or counsel for any party or objector in the matter pending before this Court authored any portion of this amicus curiae filing.  Neither has any party or objector or counsel therefor in this matter made or promised any payment to fund its preparation or submission.

## I. Identity and Interest of Amicus Curiae

Eric Alan Isaacson is a 1985 graduate of the Duke University School of Law and a member of the bar of the State of California, who from 1989 through 2004 worked as attorney with the plaintiffs' class action firm then known as Milberg Weiss Bershad Hynes & Lerach LLP (which subsequently shortened its name to Milberg LLP). In 2004, Isaacson was among the founding partners of a new firm originally known as Lerach Coughlin Stoia Geller Rudman & Robbins LLP, and currently known as Robbins Geller Rudman & Dowd LLP.

Both firms have been recognized as leaders in the field of class action litigation. Before its West Coast partners departed in 2004 to form the firm now known as Robbins Geller, the Milberg Weiss firm was generally recognized as the "largest plaintiffs' firm specializing in the complex field of securities and derivative litigation," being dubbed by FORTUNE MAGAZINE the "'king of the class action domain.'"[1] Robbins Geller subsequently took Milberg Weiss's place as the leading plaintiffs' securities class-action firm.[2]

---

[1] John C. Coffee, Jr., *The Unfaithful Champion: The Plaintiff as Monitor in Shareholder Litigation,* 48 LAW & CONTEMP. PROB. 5, 20 n.49 (1985) (quoting *Lawsuit Fever,* FORTUNE, Nov. 26, 1984, at 151); *see also* James P. McDonald, *Milberg's Monopoly: Restoring Honesty and Competition to the Plaintiffs' Bar,* 58 DUKE L.J. 505, 506 (2008); Lonny Hoffman & Alan F. Steinberg, *The Ongoing Milberg Weiss Controversy,* 30 Rev. Litig. 183, 184 (2011) ("Milberg was . . . the top securities class action firm in the country (so far ahead of its competitors that for many years there was not a close second to speak of)").

[2] *See* ELLEN M. RYAN & LAURA E. SIMMONS, SECURITIES CLASS ACTION SETTLEMENTS: 2011 REVIEW AND ANALYSIS 17 (Boston: Cornerstone Research, 2012) (noting that in the field of securities class actions, Robbins Geller "was the most active firm for the period from 2010 to 2011, involved in 35 percent of settled cases" and "is likely to continue to maintain the largest market share for settlements in future years"). Professor Coffee summarizes: "A 2011 Cornerstone Research study found that three plaintiff's law firms accounted for 58 percent of the securities class action settlements in that year. . . . The three firms were Robbins Geller Rudman & Dowd (which handled 35 percent of the settlements in that year),

In the course of his twenty-six years working with America's largest plaintiffs' side class action law firms, Isaacson's work focused primarily on federal civil appeals.[3] He both briefed and argued appeals before ten of the thirteen federal circuit courts of appeals.[4] Isaacson also took part in the merits briefing of several cases before the Supreme Court of the United States.[5] He wrote and filed numerous amicus curiae briefs on behalf of institutional investors, academics, and others, addressing critical issues in class action litigation.[6] He did extensive pro bono work as well, writing and filing numerous amicus

---

Labaton Sucharow (which handled 13 percent), and Bernstein Litowitz Berger & Grossman (which handled 10 percent)." JOHN C. COFFEE, JR., ENTREPRENEURIAL LITIGATION:  ITS RISE, FALL, AND FUTURE 81 & n.54 (Cambridge, Mass.:  Harvard University Press, 2015).

[3] See Eric Alan Isaacson, A Real-World Perspective on Withdrawal of Objections to Class-Action Settlements and Attorneys' Fee Awards: Reflections on the Proposed Revisions to Federal Rule of Civil Procedure 23(e)(5), 9 ELON L. REV. ___ (publication forthcoming December 2017).

[4] *See, e.g.*, *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762 (1st Cir. 2011); *In re WorldCom Securities Litigation (California Public Employees' Retirement System (CalPERS) v. Caboto-Gruppo Intesa, BCI)*, 496 F.3d 245 (2d Cir. 2007); *In re Constar International Inc. Securities Litig.*, 585 F.3d 774 (3d Cir. 2009); *Fener v. Operating Eng. Constr. Ind. and Misc. Pension Fund (Local 66)*, 579 F.3d 401 (5th Cir. 2009); *In re Vertrue Inc. Marketing and Sales Practices Litig.*, 719 F.3d 474 (6th Cir. 2013); *Illinois Municipal Retirement Fund v. CitiGroup, Inc.*, 391 F.3d 844 (7th Cir. 2004); *Romine v. Acxiom Corp.*, 296 F.3d 701 (8th Cir. 2002); *Makaeff v. Trump University, LLC*, 715 F.3d 254 (9th Cir. 2013), *en banc rehearing denied*, 736 F.3d 1180 (9th Cir. 2013); *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Financial Corp.*, 762 F.3d 1248 (11th Cir. 2014); *City of Harper Woods Employees' Retirement System v. Olver*, 589 F.3d 1292 (D.C. Cir. 2009).

[5] *See* Brief for Respondents, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,* 135 S.Ct. 1318 (2015) (Counsel of Record); Brief for Respondents, *Matrixx Initiatives, Inc. v. Siracusano,* 131 S.Ct. 1309 (2011); Brief for Respondents, *Dura Pharmaceuticals, Inc., v. Broudo,* 544 U.S. 336 (2005).

[6] *See, e.g.,* Brief for Amicus Curiae NECA-IBEW Welfare Trust Fund in Support of Respondent, *Campbell-Ewald Corp. v. Gomez,* 136 S. Ct. 663 (2016); Brief for Amici Curiae Civil Procedure and Securities Law Professors in Support of Respondent, *Amgen Inc. v.*

curiae briefs on behalf of religious organizations supporting religious liberty and equality under law, including same-sex couples' right to marry.[7] Isaacson found time, moreover, to

---

*Connecticut Retirement Plans & Tr. Funds,* 568 U.S. 2 (2013); Brief for Employees' Retirement System of the Government of the Virgin Islands as Amicus Curiae Supporting Respondent, *Janus Capital Group, Inc. v. First Derivative Traders,* 564 US 135 (2011); Brief for Amici Curiae MN Services Vermogensbeheer, B.V., et al., in Support of Petitioners, *Morrison v. National Australia Bank, Ltd.,* 561 U.S. 247 (2010); Brief for Amici Curiae Change to Win and the Change to Win Investment Group in Support of Respondents, *Merck & Co. v. Reynolds,* 559 U.S. 633 (2010); Brief for Amici Curiae Legal Scholars, *et al.,* in Support of Respondent, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) (law professors' brief); Brief for Amicus Curiae National Association of Securities and Commercial Law Attorneys ("NASCAT") in Support of Respondent, *Central Bank v. First Interstate Bank,* 511 U.S. 164 (1994); Brief for National Association of Securities and Commercial Law Attorneys ("NASCAT") in Support of Petitioners, *Musick, Peeler & Garrett v. Employers Insurance of Wausau,* 508 U.S. 286 (1993); Brief for Amicus Curiae Amalgamated Bank, as Trustee for the Longview Funds, in Support of Plaintiff-Appellee, *Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc.,* 531 F.3d 190 (2d Cir. 2008); Brief for Amicus Curiae The Regents of the University of California, in support of Plaintiffs-Appellants, *Simpson v. AOL Time Warner, Inc.,* 452 F.3d 1040 (9th Cir. 2006), *vacated and remanded for reconsideration, sub nom. Avis Budget Group, Inc. v. California State Teachers' Retirement System,* 552 U.S. 1162 (2008), *on remand sub nom. Simpson v. Homestore.com, Inc.,* 519 F.3d 1041 (9th Cir. 2008).

[7] *See, e.g.,* Brief for Amici Curiae California Council of Churches, et al., *Obergefell v. Hodges,* 576 U.S. __, 135 S. Ct. 2584 (2015) (California religious organizations' brief supporting marriage equality); Brief for Amici Curiae California Council of Churches, et al., *Hollingsworth v. Perry,* 570 U.S. __, 133 S. Ct. 2652 (2013) (same); Brief of Amici Curiae California Faith for Equality, et. al., *Perry v. Brown,* 671 F.3d 1052 (9th Cir. 2012); Amicus Curiae Brief of California Faith for Equality, et al., *Perry v. Brown,* 52 Cal. 4th 1116, 265 P.3d 1002 (2011) (California religious organizations' brief on question of standing certified by the Ninth Circuit); Brief of Amici Curiae Unitarian Universalist Legislative Ministry California, et al., *Perry v. Schwarzenegger,* 704 F. Supp. 2d 921 (N.D. Cal. 2010) (California religious organizations' brief supporting marriage equality); Brief of Amici Curiae California Council of Churches, et al., *Strauss v. Horton,* 46 Cal. 4th 364, 377-78, 207 P.3d 48, 93 Cal. Rptr. 3d 591 (2009) (California religious organizations' brief opposing Proposition 8); Brief of Amici Curiae Unitarian Universalist Association of Congregations, et al., *In re Marriage Cases,* 43 Cal. 4th 757, 773-78, 183 P.3d 384, 76 Cal. Rptr. 3d 683 (2008) (Interfaith brief supporting marriage equality); Brief for Amici Curiae California Faith for Equality, et al., *Pickup v. Brown,* 728 F.3d 1042 (9th Cir. 2013) (religious organizations' brief supporting constitutionality of California statute barring healthcare professionals from subjecting minors to "Sexual Orientation Change Efforts"); Brief for Amici Curiae Forum on the Military Chaplaincy, et al., *Log Cabin Republicans v. United States,* 658 F.3d 1162 (9th Cir. 2011)

author or coauthor several articles relating to issues in securities class actions,[8] as well as a few concerning civil rights and religious liberty.[9]

---

(opposing "Don't Ask Don't Tell"); Amici Curiae Brief of the Unitarian Universalist Association of Congregations, et al., *Winkler v. Gates,* 481 F.3d 977 (7th Cir. 2007) (opposing government support for the Boy Scouts of America's discriminatory program).

[8] *See, e.g*., Eric Alan Isaacson, *The Roberts Court and Securities Class Actions: Reaffirming* Basic *Principles,* 48 AKRON L. REV. 923 (2015); Patrick J. Coughlin, Eric Alan Isaacson & Joseph D. Daley, *What's Brewing in* Dura v. Broudo*? The Plaintiffs' Attorneys Review the Supreme Court's Opinion and its Import for Securities-Fraud Litigation,* 37 LOYOLA U. CHIC. L. J. 1 (2005); William S. Lerach & Eric Alan Isaacson, *Pleading Scienter Under Section 21D(b)(2) of the Securities Exchange Act of 1934: Motive, Opportunity, Recklessness and the Private Securities Litigation Reform Act of 1995*, 33 SAN DIEGO L. REV. 893 (1996); Patrick J. Coughlin & Eric Alan Isaacson, *Securities Class Actions in the United States,* in LITIGATION ISSUES IN THE DISTRIBUTION OF SECURITIES: AN INTERNATIONAL PERSPECTIVE (William G. Horton & Gerhard Wegen, eds.; London: Kluwer International/International Bar Association, 1997); Alan Schulman, Eric Isaacson & Jennifer Wells, *Pleading Standards Under the Private Securities Litigation Reform Act of 1995: The Central District of California's* Chantal *Decision*, CLASS ACTIONS & DERIVATIVE SUITS, Summer 1996, at 14; Patrick J. Coughlin & Eric Alan Isaacson, *Commencing Litigation Under the Private Securities Litigation Reform Act of 1995 ("PSLRA")*, in SECURITIES LITIGATION 1996 (Jay B. Kasner & Bruce G. Vanyo, eds.; New York & San Francisco: Practicing Law Institute 1996).

[9] *See, e.g.,* Eric Alan Isaacson*, Free Exercise for Whom? – Could the Religious-Liberty Principle that Catholics Established in* Perez v. Sharp *Also Protect Same-Sex Couples' Right to Marry?,* 92 U. DET. MERCY L. REV. 29 (2015); Eric Alan Isaacson, Goodridge *Lights A Nation's Way to Civic Equality,* BOSTON BAR JOURNAL, Nov. 15, 2013; Eric Alan Isaacson, *Are Same-Sex Marriages Really a Threat to Religious Liberty?,* 8 STAN. J. C. R. & C.L. 123 (2012); Eric Alan Isaacson, *Assaulting America's Mainstream Values: Hans Zeiger's* Get Off My Honor: The Assault on the Boy Scouts of America, 5 PIERCE L. REV. 433 (2007) (review essay); Eric Alan Isaacson, *Traditional Values, or a New Tradition of Prejudice? The Boy Scouts of America vs. the Unitarian Universalist Association of Congregations,* 17 GEO. MASON U. C.R.L.J. 1 (2006); Eric Alan Isaacson, *The Flag Burning Issue: A Legal Analysis and Comment,* 23 LOYOLA L.A. L. REV. 535 (1990).

Isaacson left Robbins Geller in March of 2016 in order to pursue his own practice as the Law Office of Eric Alan Isaacson.

Since then Isaacson has represented class members objecting to several proposed class action settlements and fee awards, and he personally filed an objection as a class member in *Muransky v. Godiva Chocolatier,* a class action very similar to this one and which raises overlapping issues. Primary among those issues is the Article III standing of a would-be class representative who suffered no actual damages to represent and bar the claims of class members who may well suffer such damages. Isaacson's opening brief on appeal to the Eleventh Circuit is attached as Exhibit A to this motion.

## II.  Argument

This Court has the inherent authority to allow an amicus curiae to participate and assist the Court. *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1500 (S.D. Fla. 1991) (citations omitted); *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006) ("[D]istrict courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings.")

The standard for leave to file an amicus brief is simply whether it will assist the Court. *Neonatology Assocs., P.A. v. C.I.R.*, 293 F.3d 128, 133 (3d Cir. 2002) (Alito, J) ("[I]f a good brief is rejected, the merits panel will be deprived of a resource that might have been of assistance."); *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir. 1997) ("An amicus brief should normally be allowed . . . when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide."); *Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999) ("[A] a court is usually

delighted to hear additional arguments from able amici that will help the court toward right answers . . . .").

As a longtime member of the plaintiffs' class action bar, and as an objector in *Muransky v. Godiva Chocolatier,* Isaacson respectfully seeks leave to appear as amicus curiae in this action, submitting a copy of his opening brief before the Eleventh Circuit from the *Godiva* proceeding which specifically concerns whether a would-be class representative suffered any concrete injury when he was handed a receipt violating FACTA's truncation requirements.

Although district courts have divided on this issue, the sole appellate decision on point found no Article III standing on similar facts. *See Meyers v. Nicolet Restaurant,* 843 F.3d 724 (7th Cir. 2016). In *Meyers* the Seventh Circuit flatly rejects a FACTA plaintiff's contention that Congress "granted him the legal right to receive a receipt that truncates the expiration date on his credit card." *Meyers,* 483 F.3d at 727. "But whether the right is characterized as 'substantive' or 'procedural,' its violation must be accompanied by an injury-in-fact." *Id.* at 727 n.2. And being handed a FACTA nonconforming receipt does not constitute such an injury.

The Seventh Circuit's analysis is directly contrary to that of the leading district court decision finding that a FACTA truncation violation without more confers Article III standing. In *Guarisma v. Microsoft Corp.,* No. 15-24326-CIV, 2016 WL 4017196, at *3-*4 (S.D. Fla. July 26, 2016), Judge Altonaga followed the Eighth Circuit's holding in *Hammer v. Sam's East, Inc.,* 754 492, 498-99 (9th Cir. 2014), that violation of FACTA's truncation requirement automatically gives rise to Article III standing because:

> FACTA endows consumers with a legal right to protect their credit identities, both pre- and post-Spokeo. See *Hammer v. Sam's E., Inc.,* 754 F.3d 492, 498–99 (8th Cir. 2014) ("By enacting 15 U.S.C. § 1681c(g)(1), Congress gave consumers the legal right to obtain a receipt at the point of sale showing no more than the last five digits of the consumer's credit or debit card number. Appellants contend that Sam's Club invaded this right. ... Thus, we conclude that appellants have alleged an injury-in-fact sufficient to confer Article III standing." (alteration and emphasis added)) . . .

*Guraisma,* 2016 WL 4017196, at *3.

In August of 2016, this Court denied a motion to dismiss this proceeding for want of standing under *Spokeo,* in a deciskon citing *Guarisma* and adopting its reasoning that:

> "'other courts have found th[at] FACTA endows consumers with a legal right to protect their credit identities.'" *Id.* (citing *Hammer v. Sam's E., Inc.*, 754 F.3d 492, 498-99 (8th Cir. 2014) ("Congress gave consumers the *legal right* to obtain a receipt at the point of sale showing no more than the last five digits of the consumer's credit or debit card number.") (emphasis added). . . ."

DE052 at 7 (Aug. 11, 2016, Order denying motion to dismiss) (quoting and following *Guarisma* and *Hammer*).

Although several district court orders have similarly held that FACTA confers a "substantive right" and, consequently, violation of the truncation requirements constitutes a "concrete injury," all rely on the Eighth Circuit's holding in *Hammer v. Sam's E., Inc.*, 754 F.3d 492, 498-99 (8th Cir. 2014), that "[b]y enacting 15 U.S.C. §1681c(g)(1), Congress gave consumers the legal right to obtain a receipt at the point of sale showing no more than the last five digits of the consumer's credit or debit card number," such that violation of this "legal right" ipso facto establishes "an injury-in-fact sufficient to confer Article III standing."[10]

---

[10] *See, e.g., Flaum v. Doctors Assocs., Inc.,* No. 0:16-cv-61198, 2016 WL 701583, at *4 (S.D. Fla. Aug. 29, 2016); *Wood v. J Choo USA, Inc.,* 2016 WL 4249953, at *4 (S.D. Fla. Aug. 11, 2016); *Guarisma v. Microsoft Corp.,* No. 15-24326-CIV, 2016 WL 4017196, at *3-

Page 8

Isaacson wishes to point out, as a friend of the Court, that the Eighth Circuit recognizes that *Spokeo* overruled its decision in *Hammer*: "In *Spokeo*, however, the Supreme Court rejected this absolute view and superseded our precedent in *Hammer*." *Braitberg v. Charter Communications,* 843 F.3d 925, 930 (8th Cir. 2016).

Most district courts considering the issue naturally reject *Hammer's* holding as contrary to *Spokeo* – and accordingly decline to follow *Guarisma. See, e.g. Cruper Weinmann v. Paris Baguette America, Inc.,* No. 13-Civ.- 7013 (JSR), 2017 WL 398657, at *4 & n.3 (S.D.N.Y. Jan. 30, 2017); *Kamal v. J. Crew Group, Inc.,* No. 2:15-0190, 2016 WL 6133827, at ***3-***4 (D.N.J. Oct. 20, 2016); *Thompson v. Rally House of Kansas City, Inc.,* No. 15- 00886-CV-W-GAF, 2016 WL 8136658, at ***3-***5 (W.D. Mo. Oct. 6, 2016).

In *Cruper Weinmann,* Judge Rakoff notes that decisions like "*Altman* and *Guarisma* also rely on an unpublished decision by the Eleventh Circuit, *Church v. Accretive Health, Inc.,* 654 F. App'x 990 (11th Cir. 2016) (per curiam), which held that the FDCPA conferred a substantive right to receive certain disclosures, yet neither case explains why FDCPA and FACTA violations should be treated the same for standing purposes." *Cruper Weinmann,* 2017 WL 398657, at *4 n.3.

They should not be. *Church* held that the FDCPA created a substantive right to receive certain informative disclosures. FACTA creates no such right – since a credit card holder presumably already knows her credit card number and expiration date. This case accordingly falls within the ambit of the Eleventh Circuit's published decision in *Nicklaw v.*

---

*4 (S.D. Fla. July 26, 2016); *Altman v. White House Black Market, Inc.,* No. 1:15-CV-2451-SCJ, 2016 WL 3946780, at *4 (N.D. Ga. July 13, 2016).

*CitiMortgage, Inc.,* 839 F.3d 998, 1002 (11th Cir. 2016), that a mere statutory violation does not confer Article III standing. *Nicklaw* holds, with *Braitberg,* that "the requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation. A plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court." *Nicklaw,* 839 F.3d at 1003 (citation omitted).

The plaintiff in *Nicklaw* alleged that CitiMortgage had violated a statute requiring timely recording of a discharge, yet the Eleventh Circuit held that "Nicklaw has failed to allege that he sustained a concrete injury. He does not allege that his credit suffered or that he or anyone else knew that the certificate of discharge had not been recorded within the statutory period." *Id.* at 1003. Here, the named plaintiff, Kerri C. Wood, similarly fails to allege that her credit suffered when she was handed a receipt informing him of his credit card's expiration date, or that anyone else knew of the violation or was in a position to take advantage of it to her injury.

As Judge Rakoff noted in *Cruper Weinmann,* this Court's order denying a *Spokeo* motion to dismiss "relies entirely on the reasoning of *Guarisma* and *Altman.*" *Cruper Weinmann,* 2017 WL 398657, at *4 n.3. Those decisions are faulty and should not be followed. *See id.* Under *Spokeo* as interpreted and applied by the appellate decisions in *Meyers, Nicklaw,* and *Braitberg,* this case should be dismissed for want of Article III standing.

Isaacson wishes to point out, moreover, that permitting the case to proceed and approving Wood's proposed settlement could do serious injury to members of the class who might – in contrast with Wood herself – actually suffer an injury on account of J Choo's

Page 10

violation of FACTA. Wood's pleadings have emphasized the enhanced *risk* of identity theft presented by FACTA violations when receipts are discarded and fall into the hands of "dumpster divers" searching for personal information. Someone going through other class members' trash might well come across J Choo receipts disclosing those class members' credit-card expiration dates, which could then be paired with the credit card number in order to make fraudulent purchases or worse.

Assuming that the danger of identity theft is as serious as Wood's papers have suggested, class members could suffer very serious injuries. Yet, if Wood's proposed settlement is approved, they will have no legal recourse. For Wood, who cannot demonstrate that she has suffered any concrete injury or actual damages of any kind, nonetheless asks this Court to approve a settlement releasing claims of class members who do suffer such injuries. *See* DE79-1 at §II.U (ECF pp. 9-10) (defining "released claims" so broadly as to include claims for actual damages). The proposed release would bar claims of class members who may learn they have become victims of actual identity theft on account of J Choo's FACTA violation: "The Class Representative, the Settlement Class, and each Settlement Class Member may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but the Class Representative, the Settlement Class, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Order of Final Approval and Judgment shall have, fully, finally, and forever waived, settled and released any and all Released Claims." DE79-1 at §VI (ECF pp.20-21).

It should go without saying that a class representative who suffered no injury cannot adequately represent the interests of class members who may yet suffer real losses on

account of J Choo's statutory violations. In *Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997), the Supreme Court struck down a settlement that would have released claims of a class of individuals exposed to asbestos – and thus to increased risk of disease – because class members who suffer real injuries and those who do not have radically different interests. In *Amchem,* the disparity of interests "between the currently injured and exposure-only categories of plaintiffs," *Amchem,* 521 U.S. at 626, precluded findings of adequate representation because "[t]he settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected." *Amchem,* 521 U.S. at 627; *see In re Payment Card Interchange Fee and Merchant Litig.,* 827 F.3d 223, 232-34 (2d Cir. 2016).

*Amchem* also underscores the problem with providing adequate notice where many members of a class have been exposed to a risk of injury that they have yet to suffer. The Supreme Court explained:

> Impediments to the provision of adequate notice, the Third Circuit emphasized, rendered highly problematic any endeavor to tie to a settlement class persons with no perceptible asbestos-related disease at the time of the settlement. *Id.,* at 633; cf. *In re Asbestos Litigation,* 90 F. 3d, at 999-1000 (Smith, J., dissenting). Many persons in the exposure-only category, the Court of Appeals stressed, may not even know of their exposure, or realize the extent of the harm they may incur. Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out.

*Amchem,* 521 U.S. at 628.

Here, plaintiff Wood – who has suffered no injury herself yet seeks a substantial incentive award – has taken no steps to provide structural assurance of fair and adequate

Page 12

representation of class members who may in fact suffer the identity theft that she contends a FACTA violation may cause some to suffer.  Neither has she adequately informed the class of the magnitude or character of the risk that they face, let alone of the claims for injuries for identity theft that that they are giving up in return for a truly paltry settlement.

### III.  Conclusion

For the foregoing reasons, Isaacson respectfully seeks leave to appear as amicus curiae to urge that this Court not approve the proposed settlement while the appeal in *Muransky v. Godiva* remains pending before the Eleventh Circuit.

### Rule 7.1(a)(3) Conferral

The undersigned hereby certifies that he has conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Date:  April 4, 2017                                  Respectfully submitted,

                                                                     s/ John W. Davis

John W. Davis (FL Bar No. 193763)
john@johnwdavis.com
Law Office of John W. Davis
501 W. Broadway, Suite 800
San Diego, CA  92101
Telephone:  (619) 400-4870
Facsimile:  (619) 342-7170

*Attorney for Eric Alan Isaacson*

**CERTIFICATE OF SERVICE**
**Case No. 15-cv-81487-BLOOM/Valle**

I hereby certify that on April 4, 2017, I filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

Date: April 4, 2017

                                                  s/ John W. Davis
                                                  John W. Davis